Present: All the Justices

JOHN R. CHAPPELL, EXECUTOR OF THE
ESTATE OF CAROLE K. CHAPPELL

v. Record No. 022966    OPINION BY JUSTICE ELIZABETH B. LACY
                                        October 31, 2003
WALTER H. PERKINS

FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
Glen Allen Tyler, Judge

In this appeal, John R. Chappell, Executor of the Estate of Carole K. Chappell (Estate), asks us to reverse the judgment of the trial court establishing the elective share of the surviving spouse, Walter H. Perkins, pursuant to Code § 64.1-16.1. Because we conclude that the circuit court did not err in applying Code § 64.1-16.1[1] as it existed at the time of Carole's death, in placing the burden of proof on the Estate to establish that certain property should be excluded from Carole's augmented estate, and in including certain property in the augmented estate, we will affirm the judgment of the trial court.

FACTS AND PROCEEDINGS

Walter and Carole were married from 1988 until Carole's death in 1997. Both had children from prior marriages, but they had none together. Walter was not a beneficiary under Carole's will.

---

[1] For convenience of reference, the current subsection numbering is used in this opinion.

Walter timely filed a claim for his elective share of Carole's augmented estate pursuant to Code § 64.1-13. He subsequently filed a petition asking the Circuit Court of the County of Northampton to determine the amount of that share, asserting that the Estate improperly excluded certain property from the augmented estate.[2]

The property at issue included two investment accounts and a parcel of real property known as the Elliotts Creek property, all held in Carole's name.[3] The Estate asserted that the funds in the investment accounts were proceeds Carole received from her first husband's retirement program following his death, from her first husband's life insurance policy, and from the sale of their home.

Walter and Carole purchased the Elliotts Creek property in 1989 as tenants by the entirety. In 1991, they jointly executed a deed of gift conveying the property solely to Carole in fee simple. In 1992, they built a residence on the property with funds from the sale of other jointly owned

---

[2] The petition initially named the Estate and Carole's four children as respondents. The children did not file a response or make an appearance in the proceedings before the trial court.

[3] The Estate also assigns error to the failure of the circuit court to exclude from the augmented estate certain bank accounts held solely in Carole's name. However, the Estate presented no argument regarding the bank accounts and we limit our consideration to the investment accounts and the Elliotts Creek property.

property, a construction loan secured by securities owned by Carole, and funds contributed by both Carole and Walter. Carole transferred the property to the Carole K. Chappell Revocable Living Trust in 1997.

Following an evidentiary hearing, the trial court held that the Estate, as the party urging the exclusions, bore the burden of establishing that property should be excluded from the augmented estate under Subsection B of Code § 64.1-16.1 and that the provisions of Code § 64.1-16.1 in effect at the time of Carole's death applied in this case. Based on these holdings the trial court concluded that the investment accounts and the Elliotts Creek property should be included in Carole's augmented estate. The Estate challenges each of these holdings in this appeal.

## DISCUSSION

In 1991, the General Assembly replaced the former doctrines of dower and curtesy with a system of property rights for surviving spouses known as the augmented estate. Code §§ 64.1-13 through -16.4. The new system allows a surviving spouse to claim a statutory fraction of the decedent's augmented estate. At issue in this appeal is the application of Code § 64.1-16.1, the statute that establishes the content of a decedent's augmented estate.

### A. Burden of Proof

As a threshold matter, the Estate challenges the circuit court's ruling that the Estate had the burden of establishing that Carole's investment accounts and the Elliotts Creek property should be excluded from the augmented estate pursuant to Subsection B of Code § 64.1-16.1.  Noting that the augmented estate statutes are silent with regard to burdens of proof and that this Court has not previously resolved this issue, the Estate suggests that the circuit court should have adopted a "prima facie case" approach based on which party has the "best available information" concerning the decedent's estate.  That party would have the initial burden to establish the augmented estate and the amount of the elective share. Any challenger would carry the burden of providing evidence to support a change in the initial determination.  We reject the Estate's proposal and find no error in the circuit court's refusal to adopt a system that shifts burdens of proof based on the locus of information in each case.

The legislation defining the augmented estate begins with the value of the property in the decedent's probate estate. That value is increased by the value of certain property previously transferred by the decedent.  Code § 64.1-16.1(A). The value of the augmented estate is then decreased by excluding the value of certain property identified in Subsection B of Code § 64.1-16.1.  Predictably, litigation

4

over the contents of the augmented estate will ensue when the representatives of the estate and the surviving spouse cannot agree on the proper application of Code § 64.1-16.1. By definition, the surviving spouse will benefit from those provisions that increase the size of the augmented estate, and the beneficiaries or heirs will benefit from those provisions that decrease its size.[4]

The petition to establish the amount of the elective share may be filed by the surviving spouse, the decedent's personal representative, or any party in interest. Code § 64.1-16.2(D). Regardless of who files the petition invoking judicial intervention, we conclude that the party seeking inclusion of property under Subsection A of Code § 64.1-16.1 has the burden of proof under that subsection and the party seeking exclusion of property under Subsection B of that section carries the burden of establishing such exclusion. Accordingly, the circuit court did not err in placing on the Estate the burden to establish that the investment accounts and the Elliotts Creek property should be excluded from the augmented estate pursuant to Subsection B of Code § 64.1-16.1.

B.  The Investment Accounts

---

[4] The provisions of the augmented estate apply whether the decedent dies testate or intestate. Code § 64.1-13.

5

The Estate next asserts that, if the circuit court had properly applied Subsection B of Code § 64.1-16.1, the investment accounts would have been excluded from the augmented estate under subparagraph (ii) of that subsection. That subsection provides in pertinent part:

> B.  Nothing herein shall cause to be included in the augmented estate . . . (ii) the value of any property, its income or proceeds, received by the decedent by gift, will, intestate succession, *or any other method or form of transfer to the extent it is received without full consideration in money or money's worth,* before or during the marriage to the surviving spouse, from a person other than the surviving spouse to the extent such property, income, or proceeds were maintained by the decedent as separate property[.]

(Emphasis added.)

The General Assembly added the italicized language to the statute in 1999, two years after Carole's death.  The circuit court applied the subsection as it existed at the time of Carole's death, concluding that the 1999 amendment affected substantive rights and therefore could not be applied retroactively.  Code § 1-16; Shiflet v. Eller, 228 Va. 115, 120, 319 S.E.2d 750, 753 (1984).

The Estate asserts that this holding was erroneous for two reasons.  First, it contends that the 1999 amendment did not affect substantive rights.  Code § 64.1-13, according to the Estate, provides the substantive right to claim the

6

elective share, and Code § 64.1-16.1 only prescribes the procedure for determining which property is to be included in the augmented estate.  Therefore, the Estate concludes, the 1999 amendment to Code § 64.1-16.1, like the section itself, affects only the procedure for determining the contents of the augmented estate and is not substantive in nature.  We disagree.

We have described a procedural statute as one prescribing methods of enforcing rights.  Shiflet, 228 Va. at 120, 319 S.E.2d at 753-54.  Code § 64.1-16.1 does not prescribe a method of enforcing the right to an elective share of an augmented estate; it defines the content of an augmented estate.  The surviving spouse is entitled to a specific interest in the augmented estate as defined by the terms of Code § 64.1-16.1 at the time of a decedent's death.  A subsequent amendment that changes the elements of the augmented estate also changes the surviving spouse's interest. Such a change in a previously established interest is substantive, not procedural.

The Estate goes on to argue that, even if Code § 64.1-16.1 affects substantive rights, the 1999 amendment did not affect those rights, because that amendment merely clarified existing law.  The Estate argues that the word "gift" contained in the subsection prior to 1999 included any

7

property received without full consideration and that the 1999 amendment merely clarified existing law. Rules of statutory construction preclude adoption of the Estate's position.

Legislation is presumed to effect a change in the law unless there is clear indication that the General Assembly intended that the legislation declare or explain existing law. Boyd v. Commonwealth, 216 Va. 16, 20, 215 S.E.2d 915, 918 (1975) (per curiam). Nothing in the 1999 amendment indicates that the General Assembly enacted the amendment as a clarification of existing law. See 1997 Acts, ch. 565 (stating that changes to Code § 8.01-249 "are declaratory of existing law").

Rules of statutory construction also assume that words in a statute are read according to their common meaning; however, if a term has a known legal definition, that definition will apply unless it is apparent that the legislature intended otherwise. Price v. Harrison, 72 Va. (31 Gratt.) 114, 117-18 (1878). "Gift" is a commonly used legal term and there is nothing to indicate that the General Assembly intended that the term have some other or additional meaning in this statute. A "gift" requires donative capacity and intent, delivery, and acceptance. See generally Taylor v. Smith, 199 Va. 871, 874, 102 S.E.2d 160, 162 (1958). The term does not include the mere receipt of property "without full

8

consideration in money or money's worth."  Indeed, at oral argument, counsel for the Estate could not identify any instance in which the receipt of funds from an insurance policy, from a retirement plan, from the sale of a house, or by operation of law qualified as receipt of property by gift.

For these reasons we conclude that the circuit court did not err in applying Code § 64.1-16.1 as it existed at the time of Carole's death in 1997.  Furthermore, because there is no evidence in this record showing that the funds in the investment accounts came from a gift, a will, or intestate succession, the circuit court did not err in holding that the Estate failed to carry its burden to establish that investment accounts should be excluded from the augmented estate under Subsection B of Code § 64.1-16.1.

### C.  The Elliotts Creek Property

Finally, the Estate asserts that the circuit court erred in concluding that the value of the Elliotts Creek property was part of Carole's augmented estate because Carole had not "transferred the property pursuant to Virginia Code § 64.1-16.1(B)(i) prior to her death."  The Estate argues that the transfer of the property by Carole and Walter to Carole in 1991 was a transfer of property by Carole made with the written consent or joinder of Walter and therefore, that the value of the property should be excluded from Carole's

9

augmented estate under Code § 64.1-16.1(B)(i).  The Estate's position is based on the literal application of subparagraph (B)(i) and the provisions of Code § 55-41.  We reject the Estate's arguments.

The provision at issue provides:

> B.  Nothing herein shall cause to be included in the augmented estate (i) the value of the property transferred by the decedent during marriage with the written consent or joinder of the surviving spouse.

The Estate argues that a plain reading of this subparagraph is that, once consent to the transfer of the property is made, the value of that property can never be included in the transferring spouse's estate.  Such an application of the statutory provision leads to absurd results.  For example, if the transferring spouse subsequently repurchases the transferred property, under the Estate's construction of Subsection (B)(i), that property could never be part of the transferring spouse's augmented estate, even though the property was part of the transferring spouse's probate estate because of the subsequent reacquisition.  Accordingly, the provision eliminates value attached to a specific conveyance of property, not to specific property.

The Estate's construction is also inconsistent with the purpose of the augmented estate legislation, which is to prevent one spouse from disinheriting the other by

10

transferring property prior to the transferor's death and thereby diminishing the transferor's estate.  To achieve this purpose, the value of certain property transferred by the decedent during marriage is imputed to the decedent's augmented estate.  Code § 64.1-16.1(A)(3).  If, however, a spouse had agreed to the transfer, the value of the transferred property is not included in the transferring spouse's augmented estate.  Code § 64.1-16.1(B)(i).  This exception is based on principles of fairness.  When a spouse agrees to a transfer of property that diminishes the transferor's estate, that spouse should not be allowed to reclaim the value of the transferred property in the transferring spouse's augmented estate.  See J. William Gray, Jr., Virginia's Augmented Estate System:  An Overview, 24 U. Rich. L. Rev. 513, 523 (1990).

If a transfer does not remove the property from the transferring spouse's estate, the consent of the non-transferring spouse, while a consent to the transfer, is not a consent to any diminution in the estate by virtue of that transfer.  Accordingly, we conclude that that subparagraph (B)(i) of Code § 64.1-16.1 applies when a spouse consents to a specific conveyance that removes the property from, or decreases the value of, the transferring spouse's estate.

11

We also reject the Estate's contention that Code § 55-41 specifically provides that when a husband and wife join in a deed of conveyance, the provisions of Code § 64.1-16.1(B)(i) are satisfied. The Estate reads Code § 55-41 too broadly.

Code § 55-41 states in pertinent part:

> When a husband and his wife have signed and delivered a writing purporting to convey any estate, real or personal, such writing . . . shall . . . operate to manifest the spouse's written consent or joinder, as contemplated in Code § 64.1-16.1 to the transfer embraced therein . . . . [and] the writing passes from such spouse . . . all right, title and interest of every nature[.]

This provision declares only that a signed and delivered writing in which both spouses convey property meets the requirement of a spouse's "written consent or joinder" in Code § 64.1-16.1(B)(i). That statute does not address whether a specific conveyance is the type of transfer that requires exclusion of the property's value from the augmented estate of the transferring spouse under Subsection (B)(i).

In this case, the transfer of the Elliotts Creek property to Carole in fee simple did not remove the property from, or decrease the value of, Carole's estate. Although consenting to that transfer, Walter did not consent to a decrease in the value of Carole's estate. Accordingly, the conveyance was not subject to Code § 64.1-16.1(B)(i) because it did not result in the diminution of Carole's estate and, therefore, the circuit

12

court did not err in including the Elliotts Creek property in Carole's augmented estate.

For these reasons we affirm the judgment of the trial court.

<u>Affirmed.</u>