# CIRCUIT COURT OF THE CITY OF ROANOKE

In re Will of
Geraldine Lake Brown,
deceased

August 21, 2012

Case No. CL12-1429

By Judge Clifford R. Weckstein

On this 15th day of August 2012, came Allie B. Kreger, III, Executor of the Estate of Geraldine Lake Brown, deceased. He has appealed the Clerk's order declining to probate a document as a codicil to the Last Will and Testament of Geraldine Lake Brown, deceased. In accordance with Virginia Code § 64.1-78, the Clerk has entered an order allowing this appeal as a matter of right.

The matter was docketed as a preferred cause for trial and was timely tried. As Va. Code § 64.1-78 provides, the Court heard the matter *de novo*, as though it had been presented to the Court in the first instance. The Court heard the evidence *ore tenus*, and the matter was argued. The Court's findings of fact and conclusions of law are set forth below in narrative form.

Geraldine Lake Brown, a resident of the City of Roanoke, Virginia, died on June 1, 2012, at the age of 95. Her Last Will and Testament, which was drafted by a lawyer and duly witnessed and proved, was admitted to probate by the Clerk of this Court on June 27, 2012, and Allie B. Kreger, III, qualified as executor of her estate.

In her will, Ms. Brown made a specific bequest of sterling silverware. She left the rest of her property to her cousin, Gerald E. Wizon. (She also named Mr. Wizon as her executor, and his wife as successor executrix. Mr. Kreger was nominated and appointed to serve if neither of the Wizons qualified.)

Gerald E. Wizon was present in person for the hearing in this matter and actively participated in the hearing. He and the executor, Allie B. Kreger, III, are the proponents of the admission to record, as a codicil to Ms. Brown's will, of a one-page document dated October 17, 2005. That document is

typewritten, *i.e.* prepared on a typewriter, whose keys made a mechanical impression on the page, not on a computer. It bears the handwritten signature "Geraldine Lake Brown." Ms. Brown's name is typed immediately beneath her signature. No witnesses signed or otherwise attested to this document.

The Court heard the testimony of Allie B. Kreger, III, and of Gerald E. Wizon. Both identified the signature on the document as that of Geraldine Lake Brown. The document was presented to the Clerk together with an envelope postmarked "Roanoke, VA 24014 18 Oct. 2005," addressed (by typewriter) to Gerald E. Wizon and bearing a return address sticker that contained Ms. Brown's name and address. Gerald Wizon testified that Ms. Brown discussed her wishes or desires with him, and he asked her to put those desires in a codicil. Ms. Brown mailed this document to him; it was in his possession when she died. The witnesses testified that Ms. Brown, who had worked as a legal secretary for some twenty years, habitually typed "everything," including her checks.

The purported codicil reads (and, for the most part, looks) like this:

October 17, 2005

If there is anything left after the proceeds of selling the house and its contents and all of my outstanding expenses are paid, I would like approximately $200,000.00 divided as follows:

| [person's name] | 30% |
| [person's name] | 15% |
| [person's name] | 15% |
| [person's name] | 15% |
| [person's name] | 10% |
| [person's name] | 5% |
| [person's name] | 5% |

If we are lucky, with no big bumps in the road and still able to keep Vanguard Group, That should cover your expenses for handling my estate. At the present time I am unable to add to Vanguard.

Oakeys' South Chapel one time viewing. I would like to look a little fancy, not *look* like a plain Jane, so Pam or Connie would be of help. Funerals are out of reach, go for less than $15,000.00 get a good vault.

*/s/ Geraldine Lake Brown*
Geraldine Lake Brown

The Court has redacted the names of the seven persons listed in the October 17 document. Their identities are irrelevant to the question of whether the document can be admitted to probate. The original document is part of the public record in the office of the Clerk of the Circuit Court of the City of Roanoke. The seven numbers listed beside those names total ninety-five percent.

Ms. Brown's will gave her real estate on Valentine Road to her personal representative, with directions that he sell the property "as soon as may be conveniently practicable after my death," but "at such time and upon such terms and conditions as my personal representative shall deem best." The proceeds of this sale, the will provided, were to be added to the residuary estate, that is, Mr. Wizon, to whom the entire residuary estate passed under Ms. Brown's will, selflessly asks the Court to admit to probate a document that would take some $200,000 that would otherwise belong to him and give that money to others. Mr. Wizon wants to do so in order to carry Geraldine Lake Brown's intentions and wishes, as he understands them.

Virginia Code § 64.1-49 is Virginia's Statute of Wills. It reads:

> No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary. If the will be wholly in the handwriting of the testator that fact shall be proved by at least two disinterested witnesses.

(The word "will" includes codicils and other testamentary dispositions. Va. Code § 64.1-45.)

The typewritten document dated October 17, 2005, bears Ms. Brown's "personal, handwritten signature." *See Shipe v. Hunter*, 280 Va. 480, 484, 699 S.E.2d 519, 521 (2010). The signature is "in the handwriting of the testat[rix]," *see* Va. Code § 64.1-49, as is the interlined word "like."

Self-evidently, and notwithstanding Ms. Brown's habitual typing of "everything," the typewritten portion of that document is not "wholly in the handwriting of [Ms. Brown]." It was not witnessed. Since it fulfills neither of the requirements of Va. Code § 64.1-49, it cannot, as a matter of law, be considered as a codicil or other testamentary instrument. *See Berry v. Trible*, 271 Va. 289, 301-02, 626 S.E.2d 440, 446-47 (2006); *see also Langfitt v. Langfitt*, 151 S.E. 715, 717 (W. Va. 1930) (rejecting argument that, since there is evidence from which to infer that the maker typed the

will himself, the court could find that the will was "therefore wholly written by him within the statute.")

Mr. Kreger, the executor, suggested that, because Ms. Brown "typed everything," typing could be considered her handwriting. This Court has not, in its research, discovered any case, anywhere in the United States, in which any court has so held.

Words in a statute are "to be read according to their common meaning." *Chappell v. Perkins*, 266 Va. 413, 420, 587 S.E.2d 584, 588 (2003). It is not possible to say that "typed" and "handwritten" (or "wholly in . . . handwriting") are commonly understood to have the same meaning. Also, one commentator notes that:

> [a] rationale for the recognition of holographic wills, despite the fact that they do not comply with the formalities of attestation, is that it is exceedingly difficult to forge a successful counterfeit of another's handwriting throughout an entire document, so that the requirement that the document, or at least its material provisions, be entirely in the testator's or testatrix's handwriting, affords protection against a forgery.

Jay M. Zitter, Annotation, *Requirement that Holographic Will, or its Material Provisions, Be Entirely in Testator's Handwriting As Affected by Appearance of Some Printed or Written Matter Not in Testator's Handwriting*, 37 A.L.R.4th 528, 2a (2012) (citations omitted). This rationale would of course have no validity if typing were to be accepted as the equivalent of handwriting.

Upon consideration whereof, it is the judgment of the Court that the proffered paper writing dated October 17, 2005, cannot be admitted to probate as a codicil to the Last Will and Testament of Geraldine Lake Brown, Deceased; the Court so orders, adjudges, and decrees.

This does not end the inquiry, as the executor and the beneficiary under the Will thereupon sought guidance and direction of the Court.

"Precatory words are generally defined as terms expressing direction, recommendation, desire, wish, or request." *Gillespie v. Davis*, 242 Va. 300, 305, 410 S.E.2d 613, 617 (1991). The evidence establishes that Ms. Brown wrote the October 17, 2005, document. She discussed its contents with Mr. Wizon and mailed it to him.

The Court has found as a matter of law that the document was not testamentary. Its words, expressing as they do Ms. Brown's desires, are thus precatory, expressing something that Ms. Brown thought "would be a reasonable exercise of the discretion" of her beneficiary, Gerald Wizon, "leaving it, however, to [Mr. Wizon] to exercise his own discretion." *See Farmers Bank of Clinch Valley v. Kinser*, 169 Va. 69, 75, 192 S.E. 745, 748 (1938), that is, the Court finds that, in the unfettered exercise of his own

discretion, Gerald Wizon has the right, prerogative, and power to carry out wishes of Ms. Brown, as expressed in the October 17, 2005, document. The Court further finds — in answer to a question posed by Mr. Wizon and Mr. Kreger — that, Mr. Wizon may in writing direct the executor to distribute sums of money (as designated by Mr. Wizon) directly to persons named by Ms. Brown, and the executor shall thereupon honor Mr. Wizon's directions, reporting and accounting for those distributions, in his accountings to the Commissioner of Accounts, in the same manner as if those distributions had been bequests of the testatrix.

If the October 17, 2005, document had been testamentary, the executor, and ultimately the Court, would have had to deal with the document's patent ambiguity, with the impossibility of discerning Ms. Brown's precise intentions, in order to carry them into effect. "[I]n the interpretation of wills, the true inquiry is not what the testator meant to express, but what do the words used express." *Massanetta Springs Summer Bible Conf. Encamp't v. Keezell*, 166 Va. 532, 540, 171 S.E. 511, 514 (1933) (citations and internal quotation marks omitted). A patent ambiguity exists when the words that the testator used do not quite make sense. A patent ambiguity arises out of the terms of the document, the uncertainty of the language used, or the vagueness of the description, the indefiniteness of expression, or other difficulty of comprehending the language the testatrix employed. *Harrison on Wills & Administration* § 16.16. It is something that is patent — obvious — on the face of the document. *Id.* If the Court "is unable to penetrate through the obscurity in which the testator has involved his intention as to a material fact, the failure of the intended testamentary disposition is the inevitable consequence." *Wotton v. Redd's Ex'r.*, 53 Va. (12 Gratt.) 196 (1855).

An executor would have had to address these questions, among others: What is the relationship, if any, between the sale of Ms. Brown's house and its contents and the distribution of "approximately $200,000.00?" How much is "approximately $200,000.00?" How is "approximately $200,000.00" to be distributed when the testatrix has designated the distribution of only 95% of it? Is 95% of this approximately $200,000 to be distributed? If so, what is to be done with the remaining (approximately) five percent?

Because the October 17, 2005, document fails as a testamentary instrument, Mr. Wizon may — if he wishes — answer these questions as he sees fit. He may make or direct — or not — any financial distributions that seem to him appropriate; he has the discretion to interpret the wishes expressed by Geraldine Lake Brown and the prerogative to decide whether to act in accordance with those wishes.

In sum, the October 17, 2005, document fails as a testamentary document. Neither witnessed nor entirely in Ms. Brown's handwriting, it cannot be admitted to probate. The fact that it is not binding does not, however, preclude Mr. Wizon from carrying out Ms. Brown's wishes, as

he understands them, nor preclude Mr. Kreger from following Mr. Wizon's directions about how to distribute the property that Ms. Brown left to Mr. Wizon.

The Clerk shall send duly certified copies of this order to Allie B. Kreger, III, to Gerald E. Wizon, and to Deborah A. Oehlschlaeger, Commissioner of Accounts of this Court. As Virginia Code § 64.1-78 provides, the Court directs that a copy of the order on the order book of the Court embracing its final action be copied by the Clerk, or deputy, into the Clerk's order book. And, nothing further remaining to be done, the Clerk shall remove the cause from the docket and place it among matters ended. In accordance with Rule 1:13, the Court dispenses with endorsements.