PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, Mims and Powell, JJ., and Koontz, S.J.

LLOYD VERNON TUTTLE, JR.

OPINION BY
v.  Record No. 111911      CHIEF JUSTICE CYNTHIA D. KINSER
                            September 14, 2012
HENRY B. WEBB, EXECUTOR
OF THE ESTATE OF GRACE TUTTLE

FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
Thomas V. Warren, Judge Designate

Lloyd Vernon Tuttle, Jr. (Lloyd) appeals the circuit court's judgment holding that execution of a check payable to his wife, Grace Overton Tuttle (Grace), excluded the funds from Grace's augmented estate and that therefore Lloyd's written consent or joinder was not required when Grace, before her death, gifted the funds to her son. Lloyd also appeals the circuit court's judgment holding him liable for more than one-half of an indebtedness evidenced by a note executed by him and Grace as co-makers. Because we conclude that Lloyd's check to Grace did not exclude those funds from Grace's augmented estate pursuant to Code § 64.1-16.1(B)(i) and that Lloyd is liable for only one-half of the joint indebtedness, we will reverse the circuit court's judgment.

I. REVELANT FACTS AND PROCEEDINGS[1]

In 2010, Grace died and was survived by her husband, Lloyd, their two adopted children, and Henry B. Webb (Henry), her son

---

[1] The facts and proceedings are set forth in a written statement of facts filed pursuant to Rule 5:11(e).

from a previous marriage. In her will, which was probated in the Prince Edward County Circuit Court Clerk's Office, Grace named Henry as the executor of her estate, and devised and bequeathed her entire estate to him.[2]

Lloyd timely filed a claim for an elective share in Grace's augmented estate pursuant to Code § 64.1-13. Subsequently, Henry filed a complaint in the circuit court, naming Lloyd as a defendant and seeking, among other things, a determination of the value of Lloyd's elective share in Grace's augmented estate.[3]

The circuit court, sitting as the trier of fact, heard evidence regarding Grace's estate. In 2005, Lloyd and Grace sold their jointly owned real property located in Chesterfield County and deposited the sale proceeds of $118,000 into their joint checking account. After using a portion of the proceeds to pay jointly owed debts, Lloyd executed two checks drawn on the joint checking account, each in the amount of $41,750. One check was payable to Lloyd, and the other check was payable to Grace. Lloyd never cashed his check, and his $41,750 remained in the joint checking account. Grace, however, used the

---

[2] Grace excluded Lloyd and her adopted children from inheriting anything under her will.

[3] A petition to establish the amount of an elective share may be filed by a surviving spouse, a decedent's personal representative, or any party in interest. Code § 64.1-16.2(D); Chappell v. Perkins, 266 Va. 413, 418, 587 S.E.2d 584, 587 (2003).

proceeds from her check to obtain two cashier's checks, each issued in the amount of $20,875 and payable to Henry.[4]

Henry testified that the cashier's checks were a gift from Grace and that Lloyd knew of the gift. Lloyd, however, testified that Grace told him that she gave Henry the money to invest for her.

The circuit court held that by executing the check to Grace, Lloyd "made a gift of $41,750[] from joint funds of the parties to his wife Grace," and that the check to Grace represented his consent in writing to a gift from Lloyd to Grace. Thus, the court concluded that Grace's gift of those funds to Henry required no further "written joinder" by Lloyd as the funds were already excluded from Grace's augmented estate.

In her will, Grace devised to Henry a parcel of real property, located in the Town of Farmville, that she previously had received as a gift from her mother. That real property was the residence of Lloyd and Grace and was encumbered by a deed of trust, which Grace had executed as the sole owner of the property. The deed of trust secured the payment of a note in the principal amount of $50,000, which both Lloyd and Grace had

---

[4] Although there is a discrepancy in the written statement of facts with regard to the date Grace and Lloyd deposited the proceeds from the sale of their real property into their joint checking account and the date Grace acquired the cashier's checks, it does not affect the Court's analysis of the issues on appeal.

executed as co-makers. They used $25,000 of the loan amount to repair the Farmville residence, but Lloyd withdrew the remaining $25,000 and deposited that sum into an account held solely in his name. Lloyd stipulated that, as co-maker of the note, he was liable for one-half of the principal amount, i.e., $25,000, together with interest, and that such sum should be deducted from his elective share of Grace's augmented estate.

The circuit court accepted an appraisal of the Farmville residence showing the property to be worth $170,000. The court found that Grace had failed to maintain that real property as separate property to the extent of $120,000 because Grace and Lloyd used part of the loan proceeds to repair and improve the property. Thus, the circuit court included the amount of $120,000 in Grace's augmented estate. Of that amount, Lloyd's elective share, one-third of the augmented estate, was $40,000. The circuit court further concluded that Lloyd and Grace's estate each should repay one-half of the first $25,000 of the loan proceeds because that amount was used to repair the Farmville residence. Because Lloyd withdrew the remaining $25,000 and deposited the funds into an account in his name alone, the court concluded that he must repay the second $25,000 withdrawal. Thus, the circuit court attributed $37,500 of the $50,000 indebtedness to Lloyd and ordered that amount deducted

4

from his $40,000 elective share, leaving Lloyd with the net sum of $2,500.

The circuit court incorporated these and other findings regarding Grace's augmented estate in a final order. We awarded Lloyd an appeal on two issues: (1) whether the circuit court erred by holding that the $41,750 check payable to Grace excluded those funds from her augmented estate and that no further "written joinder" by Lloyd was required when Grace gave the money to Henry; and (2) whether the circuit court erred by requiring Lloyd to repay one-half of the $25,000 loan proceeds used to repair the Farmville residence in addition to the other $25,000 of the indebtedness. We will address the issues in that order.

## II. ANALYSIS

### A. Standard of Review

The issues on appeal present mixed questions of law and fact. Thus, "[w]e give deference to the trial court's factual findings and view the facts in the light most favorable to the prevailing part[y,]" but we review the trial court's application of the law to those facts de novo. Caplan v. Bogard, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002).

## B. Augmented Estate

As relevant to this appeal, the term

> augmented estate means the estate passing by
> testate or intestate succession, real and
> personal, after payment of allowances and
> exemptions . . . to which is added the sum
> of the following amounts:
>
> . . . .
>
> 3. The value of property transferred to
> anyone other than a bona fide purchaser by
> the decedent at any time during the marriage
> to the surviving spouse, to or for the
> benefit of any person other than the
> surviving spouse, to the extent that the
> decedent did not receive adequate and full
> consideration in money or money's worth for
> the transfer, if the transfer is of any of
> the following types:
>
> . . . .
>
> d. Any transfer made to or for the
> benefit of a donee within the calendar year
> of the decedent's death or any of the five
> preceding calendar years to the extent that
> the aggregate value of the transfers to the
> donee exceeds $10,000 in that calendar year.

Code § 64.1-16.1(A)(3)(d).

To prevent one spouse from disinheriting the other by transferring property before the transferor dies, this statutory provision imputes to the decedent's augmented estate the value of property transferred by the decedent during the marriage. Chappell v. Perkins, 266 Va. 413, 421, 587 S.E.2d 584, 588 (2003). If, however, property was "transferred by the decedent

6

during marriage with the written consent or joinder of the surviving spouse," the value of the transferred property is not included in the transferring spouse's augmented estate. Code § 64.1-16.1(B)(i). The exclusion in subsection (B)(i) is at issue in the case now before us. The party seeking such an exclusion of property from a decedent's augmented estate carries the burden of establishing it. Chappell, 266 Va. at 418, 587 S.E.2d at 587.

We addressed this particular exclusion in Chappell. There, the real property at issue, known as the Elliotts Creek property, was purchased by a husband and wife as tenants by the entirety. Id. at 417, 587 S.E.2d at 586. Subsequently, they executed a deed of gift conveying the property to the wife in fee simple, and the wife then transferred the Elliotts Creek property to her revocable living trust. Id. The wife died and the husband filed a claim for his elective share of the decedent's augmented estate. Id. at 416, 587 S.E.2d at 585. The decedent's estate asserted that the

> transfer of the property by [the wife] and [the husband] to [the wife] was a transfer of property by [the wife] made with the written consent or joinder of [the husband] and therefore, that the value of the property should be excluded from [the decedent's] augmented estate under Code § 64.1-16.1(B)(i).

Id. at 421, 587 S.E.2d at 588.

7

We concluded that the circuit court did not err by including the Elliotts Creek property in the decedent's augmented estate. Id. at 422, 587 S.E.2d at 589. Holding that "subparagraph (B)(i) of Code § 64.1-16.1 applies when a spouse consents to a specific conveyance that removes the property from, or decreases the value of, the transferring spouse's estate," we concluded that "the transfer of the Elliotts Creek property to [the wife] in fee simple did not remove the property from, or decrease the value of, [the decedent's] estate." Id. We explained that "[i]f a transfer does not remove the property from the transferring spouse's estate, the consent of the non-transferring spouse, while a consent to the transfer, is not a consent to any diminution in the estate by virtue of that transfer." Id. Thus, the Elliotts Creek property did not come within the exclusion in Code § 64.1-16.1(B)(i) because the husband's consent to the transfer of the property to the wife was not a consent to a decrease in the value of the decedent's estate. Id.

Relying on Chappell, Lloyd argues that his consent to the transfer of joint funds to Grace alone was not a written consent to or joinder in her subsequent gift to Henry. Lloyd further contends the circuit court erred by concluding that he did not need to consent to or join in Grace's gift to Henry because the funds were already excluded from Grace's augmented estate.

8

Henry, however, contends that Lloyd's act of preparing, signing and giving the $41,750 check to Grace with the knowledge that she intended to give the proceeds to Henry constituted his written consent, or at least his joinder, in Grace's subsequent gift to Henry.

Contrary to Henry's assertions, the check from Lloyd to Grace merely transferred $41,750 of jointly owned funds to Grace. At that juncture, the funds gifted to Grace became her sole property. Lloyd's execution and gift of the check to Grace did not remove those funds from, or decrease the value of, Grace's estate. In other words, the check represented Lloyd's consent to the transfer of joint property to Grace alone but it did not signify his consent to remove the property from or diminish the value of Grace's estate. And, contrary to the circuit court's holding, Lloyd's gift to Grace did not exclude those funds from her augmented estate. Consequently, Lloyd's written consent to or joinder in Grace's subsequent gift to Henry was still required. Thus, the circuit court erred by excluding the sum of $41,750 from Grace's augmented estate.

## C. Joint Indebtedness

According to the written statement of facts, Grace and Lloyd executed the $50,000 note "as co-makers."[5] Whether that note "was secured or unsecured[] is not material in fixing

---

[5] The actual note is not in the record of this case.

liability."  Brown v. Hargraves, 198 Va. 748, 751, 96 S.E.2d 788, 791 (1957).  "Where the obligation to pay the debt is personal, joint and several, as here, it is the nature of the obligation which controls."  Id.  The debt evidenced by a note is created when the note is executed.  Id. at 752, 96 S.E.2d at 791.  Thus, as co-makers, Grace and Lloyd became primarily liable, jointly and severally.  See id. at 751-52, 96 S.E.2d at 791.

When two or more persons are jointly liable to pay a debt, "[t]he law implies a contract between [the co-obligors] to contribute ratably toward the discharge of the obligation."  Van Winckel v. Carter, 198 Va. 550, 555, 95 S.E.2d 148, 152 (1956). A party's "right to contribution does not arise out of any express contract or agreement between the parties to indemnify each other, but on the broad principles of equity which courts of law enforce that where two persons are subject to a common burden it shall be borne equally between them."  Houston v. Bain, 170 Va. 378, 389-90, 196 S.E. 657, 662 (1938).

Lloyd argues that nothing under the augmented estate statutes makes him, as a co-maker of the $50,000 note, liable for more than one-half of the principal amount of that indebtedness.  Henry contends, however, that the circuit court correctly found Lloyd liable for one-half of the first $25,000 draw from the loan proceeds because that sum was used to improve

10

the Farmville residence, thus increasing both the value of that property and the value of Lloyd's elective share.  Henry argues that because Lloyd withdrew the second $25,000 for his sole benefit, unlike the first $25,000 draw that benefited both Lloyd and Grace, the circuit court acted within its discretion by requiring Lloyd to pay a disproportionate amount of the indebtedness.  We do not agree with Henry.

In Brown, the administrator of an estate sought guidance on whether a decedent's personal estate should be used to pay a debt evidenced by two notes jointly executed by the decedent and the surviving spouse.  198 Va. at 748-49, 96 S.E.2d at 789. While the defendant did not question the general rule that "a personal debt of the decedent . . . is to be paid primarily out of his personalty," the defendant asserted that an exception applied when "the entire estate is vested in the surviving joint tenant[] and the estate of the deceased [took] nothing in the property."  Id. at 750, 96 S.E.2d at 790.  We disagreed and held the decedent and the surviving spouse, as

> the makers of the notes . . . . made and signed
> personal obligations, whereby each of them became
> personally liable to the holders of the notes for
> the full amounts thereof, and, as between
> themselves, jointly and severally liable. Subject
> to a common burden to be borne equally, each had
> the right to look to the other for reimbursement
> for any amount expended beyond the proportionate
> amount required to be paid by each of them. Thus
> each was entitled to the right of contribution,
> an equity which arises when one of several

11

> parties liable on a common debt discharges the
> obligation for the benefit of all.

Id. at 751, 96 S.E.2d at 791.

Here, both Grace and Lloyd, as co-makers of the $50,000 note, became personally liable to the holder of the note for the full amount owed and as between themselves, jointly and severally liable.  Because both Grace and Lloyd became "[s]ubject to a common burden to be borne equally," each was entitled to the right of contribution from the other for one-half of the joint indebtedness evidenced by the note.  Id. Thus, the circuit court erred by charging Lloyd with more than one-half of the total indebtedness.

## III. CONCLUSION

In sum, the circuit court erred by failing to include the sum of $41,750 in Grace's augmented estate.  The court further erred by requiring Lloyd to pay more than one-half of the total indebtedness evidenced by the $50,000 note.  Therefore, we will reverse the judgment of the circuit court and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.