782 N.W.2d 596 (2010)
279 Neb. 887
In re Estate of Lyle L. FRIES, deceased.
Margaret Fries, appellant,
v.
Kathleen Hurst, Personal Representative of the Estate of Lyle L. Fries, deceased, appellee, and
James Fries et al., intervenors-appellees.
No. S-08-1189.
Supreme Court of Nebraska.
May 21, 2010.
*599 Andrew J. Hoffman, of Krotter Hoffman, P.C., L.L.O., and Jason D. Mielak, of Fehringer, Mielak & Fehringer, P.C., L.L.O., for appellant.
Thomas L. Kovanda, of Anderson, Vipperman, Kovanda & Wetzel, for appellee.
Mark Porto and Ronald S. Depue, of Shamberg, Wolf, McDermott & Depue, for intervenors-appellees.
*600 HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
Lyle and Margaret Fries were married in 1991. At the time of marriage, Lyle owned three parcels of land (the Properties). In 1993, Margaret executed quitclaim deeds on the Properties in favor of Lyle. Lyle then conveyed the Properties to his children from a previous marriage. After Lyle died, Margaret chose to take an elective share of his augmented estate. The issue in this case is whether the value of the Properties should be part of Lyle's augmented estate. We conclude that there is a genuine issue of material fact as to whether the Properties should be included in the augmented estate for calculating Margaret's elective share, and we reverse the county court's summary judgment dismissing Margaret's claim.

BACKGROUND
Lyle and Margaret were married in 1991 and remained married until Lyle's death in 2006. At the time they were married, Lyle owned the Properties three separate parcels of land located in Howard County, totaling approximately 224 acres. On November 16, 1993, Margaret executed quitclaim deeds for each of the Properties, transferring her interest to Lyle. On December 2, Lyle recorded the quitclaim deeds and separately signed and caused to be recorded joint tenancy warranty deeds of the Properties for the benefit of his children from a prior marriage, namely, James Fries, William Fries, Dennis Fries, Daniel Fries, and Kathleen Hurst (the children). Kathleen is the personal representative of Lyle's estate; James, William, Dennis, Daniel, and Kathleen, individually, are intervenors in this case. We will refer to the personal representative and intervenors collectively as the "appellees."
In the deed transferring the Properties to the children, Lyle retained no legal interest in the Properties. Nevertheless, Lyle continued to perform management functions for, receive income from, and pay taxes on the Properties until his death. Lyle's last will and testament provided that both Margaret and the children were to receive certain assets belonging to Lyle, but there was no mention of the Properties.
After Lyle died, Margaret filed a petition in the county court for an elective share of Lyle's augmented estate. In her petition, Margaret claimed that the Properties were part of Lyle's augmented estate and requested that the court award her a spousal elective share of 50 percent of the Properties. Kathleen, as personal representative of the estate, and the children, as intervenors, objected. Margaret and the appellees filed cross-motions for partial summary judgment concerning whether the Properties should be included in the augmented estate. The county court sustained the appellees' motion, and, after other proceedings that are not pertinent to our analysis of this appeal, the court dismissed Margaret's petition for an elective share as augmented by the Properties. Margaret now appeals.

ASSIGNMENTS OF ERROR
Margaret assigns, consolidated and restated, that the county court erred in determining that there was no genuine issue of material fact as to whether Lyle retained at death the possession or enjoyment of, or right to income from, the Properties. Margaret also argues that she did not consent in writing to the December 2, 1993, transfer of the Properties from Lyle to his children.

*601 STANDARD OF REVIEW
An appellate court reviews probate cases for error appearing on the record made in the county court.[1] But when reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.[2] The meaning of a statute is a question of law.[3]
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all favorable inferences deducible from the evidence.[5]

ANALYSIS

GENUINE ISSUE WHETHER LYLE RETAINED AT DEATH POSSESSION OR ENJOYMENT OF, OR RIGHT TO INCOME FROM, THE PROPERTIES
Under Neb.Rev.Stat. § 30-2313(a) (Reissue 2008), a surviving spouse has a right to take an elective share of a decedent's estate "in any fraction not in excess of one-half of the augmented estate under the limitations and conditions hereinafter stated." At issue in this appeal is the application of Neb.Rev.Stat. § 30-2314 (Reissue 2008), which establishes the content of a decedent's augmented estate. Under § 30-2314, the probate estate is augmented by first reducing the estate by specified obligations and liabilities and then increasing the estate by the value of specified properties and transfers.[6] The augmented estate also includes several categories of inter vivos transfers made by the decedent.[7]
The purpose of the concept of augmenting the probate estate in computing the elective share is twofold: (1) to prevent the owner of wealth from making arrangements which transmit his property to others by means other than probate deliberately to defeat the right of the surviving spouse to a share and (2) to prevent the surviving spouse from electing to a share of the probate estate when the spouse has received a fair share of the total wealth of the decedent either during the lifetime of the decedent or at death by life insurance, joint tenancy assets, and other nonprobate arrangements.[8] The combined effect of the statutory elective share and augmented estate concepts is intended to protect the surviving spouse of a decedent against donative inter vivos transfers by devices which would deprive the survivor of a "fair share" of the decedent's estate and at the same time prevent the surviving spouse from receiving more than such share by allowing the acceptance of certain transfers and insurance proceeds *602 and also yet elect against the will.[9]
In her first assignment of error, Margaret argues that the value of the Properties should be included in the augmented estate pursuant to § 30-2314(a)(1), which provides, in relevant part, that the augmented estate includes
[t]he value of property transferred by the decedent at any time during marriage. . . for the benefit of any person other than a bona fide purchaser or the surviving spouse, but only to the extent to which the decedent did not receive adequate and full consideration in money or money's worth for such transfer, if such transfer is . . .:
(i) Any transfer under which the decedent retained at death the possession or enjoyment of, or right to income from, the property.
It is undisputed that the Properties were not transferred to a bona fide purchaser or surviving spouse and that they were not transferred for adequate and full consideration. And there is very little question that the record presents a genuine issue of material fact as to whether, at the time of his death, Lyle actually had possession of the Properties and disposition of their income. The dispute is over whether those facts are enough to satisfy § 30-2314(a)(1)(i).
The appellees argue that the plain language of the statute limits the property included in the augmented estate to that in which the decedent retained an interest under a "transfer" document. In other words, the appellees argue that a "transfer" is the legal instrument by which the property is conveyed and that a decedent retains possession or enjoyment of, or right to income from, property "under" the "transfer" only if the legal instrument secures the decedent's right to possession, enjoyment, or income. And in this case, the warranty deed transferring the Properties from Lyle to his children did not.
But absent a statutory indication to the contrary, we give words in a statute their ordinary meaning.[10] And § 30-2314(a)(1)(i) does not include the word "document" or even require a writing evidencing the transfer. An appellate court will not read into a statute a meaning that is not there.[11] A transfer encompasses "[a]ny mode of disposing of or parting with an asset or an interest in an asset."[12] What is significant for purposes of § 30-2314(a)(1)(i) is whether the parties to the transfer intended the decedent to functionally retain possession or enjoyment of, or the right to income from, the propertynot whether the written instrument of transfer reflects that intent.
And when construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.[13] We look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served.[14] The statutory comments to § 30-2314 specifically state that transfers within the meaning of subsection (a)(1) "are transfers by the decedent *603 during his lifetime which are essentially will substitutes, arrangements which give him continued benefits or controls over the property."[15] One of the purposes of the augmented estate provisions, as noted above, is to prevent the surviving spouse's right to an elective share to be defeated by a decedent's arrangements to transfer property outside probate. That purpose could hardly be well served if enforcement of the surviving spouse's rights depended upon a decedent's being foolish enough to record his or her intent in a written legal instrument.
Moreover, as noted by the Legislature, the augmented estate resembles the gross estate for federal estate tax purposes.[16] The language "possession or enjoyment of, or right to income from, the property" is almost identical to language in the Internal Revenue Code that defines a decedent's gross estate.[17] And courts have emphasized that this language "describes a broad scheme of inclusion in the gross estate, not limited by the form of the transaction, but concerned with all inter vivos transfers where outright disposition of the property is delayed until the transferor's death."[18]
Therefore, to satisfy that language, "[t]he donor's interest need not be reserved by the instrument of transfer, nor need it be legally enforceable."[19] It is well settled that the terms "enjoy" and "enjoyment," as used in various estate tax statutes, are not terms of art, but connote substantial present economic benefit rather than technical vesting of title or estates.[20] And in the case of real property, the terms "possession" and "enjoyment" have been interpreted to mean "the lifetime use of the property."[21] The language encompasses an interest retained pursuant to an understanding or arrangement, which need not be express, but may be implied from all the circumstances surrounding the transfer.[22]
So, for purposes of determining whether a decedent retained "possession or enjoyment of, or right to income from, the property," a transferor retains the enjoyment of property if there is an express or implied agreement at the time of the transfer that the transferor will retain the present economic benefits of the property, even if the retained right is not legally enforceable.[23] And a transferor retains the right of enjoyment of property if, at the time of transfer, there was an express or implied agreement that the interest or right would later be conferred.[24]
For instance, in Guynn v. United *604 States,[25] the decedent, an 81-year-old woman, conveyed a residence to her daughter, but remained in the residence without an express agreement that entitled her to do so, paid no rent to the daughter, and paid for improvements and certain expenses to the residence. The decedent's daughter testified that the decedent's remaining in the property was not discussed, because it was understood by all involved that she would stay in the property until her death. The Fourth Circuit noted that "[f]rom every outward indication, [the decedent's] relationship to the property was no different after the transfer to her daughter than before. Conversely, [the daughter's] possession and economic enjoyment of the property was totally postponed until her mother's death."[26] Therefore, the Fourth Circuit held that the evidence established an implied understanding that the decedent would retain "the possession or enjoyment" of the property for her lifetime despite the transfer.[27]
We find the foregoing reasoning persuasive, and consistent with our own reading of the identical language of § 30-2314(a)(1)(i). We conclude that under § 30-2314(a)(1)(i), a transfer "under which the decedent retained at death the possession or enjoyment of, or right to income from, the property" does not require that the decedent's right to possession of, enjoyment of, or income from the property be recorded in the instrument of transfer. A decedent retains possession or enjoyment of, or the right to income from, property when it is understood that the decedent will retain such an interest despite the transfer. And such an understanding need not be express; it can be implied from the circumstances surrounding the transfer.[28]
Based on our review of the record, the circumstances of this case could support such an implication. It is not disputed that Lyle received income from the Properties, or that Lyle paid taxes on that income and on the Properties themselves. The evidence also establishes that Lyle used the Properties for recreational purposes, like hunting and fishing, until he was physically unable to do so, and held himself out to friends, tenants, and government agencies as the owner of the Properties. And more important, the personal representative testified that when Lyle told her about his plan to transfer the Properties, she asked about "the income and the tenants and he goes well, you know, since I've always done it I would like to continue doing that." Some of the children continued paying Lyle rent to farm the Properties, and the personal representative agreed that Lyle "made the final decision" when it came to the Properties, up until his death.
Granted, there is evidence in the record to the contraryfor instance, James averred that the children gave Lyle the Properties' income because they wanted to, not because they had to, and that Lyle had never indicated that he expected to receive that income. However, on a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists.[29] The evidence in this case, taken in the light most favorable to Margaret, could support an inference that Lyle was intended to retain possession and *605 enjoyment of, and the right to income from, the Properties, despite their transfer to the children. Therefore, the county court erred in concluding, as a matter of law, that the Properties should not be included in the augmented estate. Upon further proceedings on remand, the court should conduct an analysis based on the principles set forth above.

GENUINE ISSUE WHETHER MARGARET CONSENTED TO TRANSFER OF THE PROPERTIES TO THE CHILDREN
As an alternative basis for summary judgment, the appellees argue that the Properties are excluded from the augmented estate because Margaret consented to their transfer. Central to the appellees' argument is § 30-2314(c)(2), which provides, in pertinent part, that property otherwise includable in the augmented estate should not be included if it was
transferred by the decedent to any person other than the surviving spouse by any bill of sale, conveyance, deed, or gift or by any other means of transfer either by an instrument of transfer joined in by the surviving spouse of the decedent or with the consent to transfer manifested before or after death of the decedent by a writing signed by the surviving spouse of the decedent before, contemporaneously with, or after the transfer[.]
The appellees contend that Margaret conveyed all of her interests in the Properties to Lyle when she executed the quitclaim deeds in November 1993 and that because Lyle acquired the Properties prior to his marriage to Margaret, the only interest Margaret had in the Properties was a possibility of inheritance. As a result, the appellees contend, the quitclaim deeds can only be interpreted as Margaret's consent to divest herself of any inheritance interest in the Properties. We disagree.
Here, it is undisputed that Margaret executed three quit-claim deeds in favor of Lyle in November 1993. In all three quitclaim deeds, after a legal description of the property, the deed states, "GRANTOR covenants with GRANTEE that GRANTOR: 1. Is lawfully seized of such real estate; 2. Has legal power and lawful authority to convey the same; 3. Warrants that Grantor will convey all interest that she possesses in said property to Grantee." The quitclaim deeds, however, do not set forth any intent by Margaret to give up her rights to dissent from Lyle's will or claim an elective share of Lyle's estate. Moreover, the record also contains evidence indicating that Margaret did not intend to do so. Margaret averred that in November 1993, Lyle presented three documents for her signature and
informed me that they were for tax purposes and asked that I sign them. He did not discuss with me what they were for or why I was signing them other then [sic] to tell me that they were for tax purposes. . . . Nobody was with Lyle when I signed these documents nor did he tell me what he was planning to do subsequent to my signing. It wasn't until many years later, that I learned that these documents were actually quitclaim deeds.
More important, Margaret did not sign the December 1993 deeds transferring title of the Properties to the children. And contrary to the appellees' assertion, Lyle's later transfer of the Properties to the childrennot Margaret's execution of the quitclaim deedsis the decisive transfer. Section 30-2314(c)(2) clearly sets forth that the pertinent transfer is one in which property is transferred by the decedent "to any person other than the surviving spouse." There is no evidence that Margaret expressly manifested her consent "by a writing signed" or otherwiseto the transfer of the Properties to the children. *606 Margaret stated that she "had no knowledge of these deeds and I never consented to them in writing, I never consented to them verbally, or otherwise." In fact, Margaret said that she was unaware of the fact that Lyle executed joint tenancy warranty deeds with the children, because Lyle continued to retain all of the incidences of ownership and all of the benefits from owning the property.
Furthermore, the appellees' construction of § 30-2314(c)(2) is inconsistent with the purpose of the augmented estate statutes. As mentioned above, the dual purpose of the elective share provisions is to prevent a spouse from being denied a fair share of the decedent's estate and also to prevent the surviving spouse from obtaining more than a fair share of the estate when he or she has already received a share of the estate through some other means. To achieve this purpose, the value of certain property transferred by the decedent during marriage is included in the decedent's augmented estate.[30]
If, however, a spouse had agreed to the transfer, the value of the transferred property is not included in the transferring spouse's augmented estate.[31] Logically, when a spouse agrees to a transfer of property that diminishes the eventual decedent's estate, the surviving spouse should not be allowed to reclaim the value of the transferred property in the augmented estate.[32] But that principle is not implicated if a transfer did not remove the property from the decedent spouse's estate, because the consent of the surviving spouse to the transfer was not a consent to any corresponding diminution in the estate.[33] And the transfer that is at issue here is the one that actually removed the Properties from Lyle's possession.
The appellees' argument seems to be that the quitclaim deeds should be read as evidence that Margaret consented to the later transfers as well. That interpretation is strained, given the evidence, and is certainly insufficient to establish consent in writing to the later transfers as a matter of law, given the paucity of evidence that Margaret was even informed of the later transfers. The evidence establishes, at the very least, a genuine issue of material fact regarding whether Margaret's execution of the quitclaim deeds to Lyle should be interpreted as her written consent to the later transfer of the Properties to the children. Therefore, we find no merit to the appellees' argument that the court's summary judgment can be affirmed based on that reasoning.

CONCLUSION
The record establishes a genuine issue of material fact as to whether it was understood that Lyle would retain possession and enjoyment of, and income from, the Properties, despite transferring them to his children. And the record does not establish as a matter of law that Margaret consented in writing to Lyle's transfer of the Properties to his children. Therefore, the county court erred in entering summary judgment and dismissing Margaret's petition for an elective share of Lyle's augmented estate. We reverse the judgment of the county court and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] In re Guardianship & Conservatorship of Karin P., 271 Neb. 917, 716 N.W.2d 681 (2006).
[2] In re Estate of Chrisp, 276 Neb. 966, 759 N.W.2d 87 (2009).
[3] INA Group v. Young, 271 Neb. 956, 716 N.W.2d 733 (2006).
[4] Schuyler Co-op. Assn. v. Sahs, 276 Neb. 578, 755 N.W.2d 802 (2008).
[5] Id.
[6] In re Estate of Chrisp, supra note 2.
[7] See, § 30-2314; In re Estate of Myers, 256 Neb. 817, 594 N.W.2d 563 (1999).
[8] In re Estate of Myers, supra note 7.
[9] Id.
[10] In re Estate of Chrisp, supra note 2.
[11] Id.
[12] Black's Law Dictionary 1636 (9th ed. 2009) (emphasis supplied).
[13] TracFone Wireless v. Nebraska Pub. Serv. Comm., 279 Neb. 426, 778 N.W.2d 452 (2010).
[14] Id.
[15] See § 30-2314 (Reissue 1975) (statutory comment). Accord Unif. Probate Code, prior art. II, § 2-202, comment, 8 (part I) U.L.A. at 299 (1998).
[16] Working Papers and Preliminary Interim Study Report on a Revised Nebraska Probate Code, L.B. 354, Judiciary Committee, 83rd Leg. (Aug. 30, 1973).
[17] See I.R.C. § 2036(a)(1) (2006).
[18] Guynn v. United States, 437 F.2d 1148, 1150 (4th Cir.1971).
[19] Id., citing McNichol's Estate v. C.I.R., 265 F.2d 667 (3d Cir.1959).
[20] United States v. Byrum, 408 U.S. 125, 92 S.Ct. 2382, 33 L.Ed.2d 238 (1972).
[21] Estate of Tehan v. C.I.R., 89 T.C.M. (CCH) 1374 (2005). See, Byrum, supra note 20; Estate of Maxwell v. C.I.R., 3 F.3d 591 (2d Cir.1993).
[22] Guynn, supra note 18, citing Skinner's Estate v. United States, 316 F.2d 517 (3d Cir. 1963).
[23] Estate of Reichardt v. Commissioner, 114 T.C. 144, 2000 WL 230358 (2000).
[24] Kimbell v. U.S., 371 F.3d 257 (5th Cir. 2004); Estate of Reichardt, supra note 23.
[25] Guynn, supra note 18.
[26] Id. at 1150.
[27] Id.
[28] See id.
[29] Riesen v. Irwin Indus. Tool Co., 272 Neb. 41, 717 N.W.2d 907 (2006).
[30] See § 30-2314(a)(1).
[31] See § 30-2314(c)(2).
[32] Chappell v. Perkins, 266 Va. 413, 587 S.E.2d 584 (2003).
[33] See id.