Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/26/2021 08:08 AM CST

In re Estate of Gale H. Marsh, deceased.
Sarah J. Marsh and Carla M. Marsh, Cotrustees of
the Gale H. Marsh Revocable Trust Agreement,
appellees, v. County of Richardson,
Nebraska, appellant.

___ N.W.2d ___

Filed December 4, 2020.    No. S-20-102.

1. **Decedents' Estates: Taxation: Appeal and Error.** On appeal of an inheritance tax determination, an appellate court reviews the case for error appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Decedents' Estates: Appeal and Error.** In reviewing a judgment of the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.
4. ____: ____. The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous.
5. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court.
6. **Motions for Continuance: Appeal and Error.** A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.
7. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

8. ____: ____. If the court from which an appeal was taken lacked jurisdiction, then the appellate court acquires no jurisdiction.

9. **Jurisdiction.** One who invokes the power of the court on an issue other than the court's jurisdiction over one's person makes a general appearance so as to confer on the court personal jurisdiction over that person.

10. **Jurisdiction: Words and Phrases.** Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.

11. **Decedents' Estates: Taxation: Jurisdiction.** Neb. Rev. Stat. § 77-2018.02(1) (Supp. 2019) confers upon the county court subject matter jurisdiction of an independent proceeding brought for the sole purpose of determining Nebraska inheritance tax.

12. **Statutes.** Basic principles of statutory interpretation require a court to give statutory language its plain and ordinary meaning.

13. **Decedents' Estates: Taxation: Jurisdiction: Notice.** Published notice is not a prerequisite of a county court's subject matter jurisdiction of an independent proceeding for the sole purpose of determining Nebraska inheritance tax; rather, such jurisdiction is invoked by the filing of a petition to initiate the proceeding.

14. **Appeal and Error.** Error without prejudice is not a ground for reversal.

15. **Gifts: Intent.** To make a valid inter vivos gift, there must be an intention to transfer title to property, delivery by the donor, and acceptance by the donee.

16. **Gifts.** Ordinarily, actual delivery is necessary where the subject of the gift is capable of manual delivery, but where actual manual delivery cannot be made, the donor may do that which, under the circumstances, will in reason be considered equivalent to actual delivery.

17. ____. The exercise by the donee of dominion over the property which is the subject of a gift, or an assertion of a right to the property by the donee, generally will constitute an acceptance.

18. **Deeds: Intent.** Whether a deed or other instrument conveying an interest in property has been delivered is largely a question of intent to be determined by the facts and circumstances of the particular case.

Appeal from the County Court for Richardson County: CURTIS L. MASCHMAN, Judge. Affirmed.

Douglas E. Merz, Richardson County Attorney, Samantha K. Scheitel, and Thomas J. Gist for appellant.

Steven J. Mercure and Lindy L. Mahoney, of Nestor & Mercure, for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

After Gale H. Marsh died, his daughters brought a proceeding to determine the amount of inheritance tax due. The dispute centered on the ownership interest of Marsh's revocable trust in a limited liability company valued at over $12 million. The county court determined that assignments signed by Marsh rather than the trustees were valid. The County of Richardson (County) appeals. Finding no error by the county court in the respects alleged, we affirm.

## II. BACKGROUND

### 1. Procedural Background

Marsh, a domiciliary of Richardson County, Nebraska, died on April 6, 2017. On March 22, 2018, his daughters, Sarah J. Marsh and Carla M. Marsh, filed in the county court for Richardson County a petition for determination of inheritance tax. The petition alleged that Sarah and Carla (collectively cotrustees) were cotrustees of the Gale H. Marsh Revocable Trust Agreement, that they had a legal interest in the property involved in the determination of inheritance tax, that they were the beneficiaries of the trust property, and that they were the only persons against whom an inheritance tax may be assessed.

Together with the petition, the cotrustees filed a number of documents, including an inventory and an inheritance tax worksheet. The inventory stated that the Gale H. Marsh Revocable Trust owned a 15.62152-percent interest in Marcasa, LLC; that the total value of Marcasa was $12,914,162; and that the

trust's interest amounted to $1,412,171.88. The inheritance tax worksheet showed assets of the estate of $1,476,720.88 and total deductions of $585,250.26, for a net value of property subject to Nebraska inheritance tax of $891,470.62. According to the inheritance tax computation, Sarah owed $4,081.22 and Carla owed $4,033.49. On March 26, 2018, the cotrustees filed an application and moved the court for an order allowing payment of tentative inheritance tax by Sarah and by Carla in the amounts computed on the worksheet.[1]

The County filed an objection to the inheritance tax worksheet. According to the County, the worksheet did not reflect the fair market value of the assets owned by Marsh.

## 2. Hearing

Nearly 1½ years later, the court commenced an evidentiary hearing. The hearing was held on two dates in 2019: August 14 and September 20.

### (a) Revocable Trust

Evidence was adduced concerning the trust. Marsh, identified as the settlor, created the inter vivos revocable trust on November 4, 1988. As mentioned, he designated his daughters as cotrustees. Sarah testified that she did not actually serve as a trustee or cotrustee during Marsh's lifetime, explaining that "he managed his own affairs."

Article II of the trust agreement addressed trust property. It stated that trust property was listed on an attached "Schedule 'A'" and that insurance policies were listed on an attached "Schedule 'B'"; however, Sarah was unable to find either document. Marsh "reserve[d] the right to add property to the trust or to withdraw property from the trust in the manner provided for alteration of the trust in ARTICLE IV."

Article IV of the trust agreement dealt with changes to the trust. It stated that Marsh "reserve[d] the right at any time

---

[1] See Neb. Rev. Stat. § 77-2018.07(1) (Reissue 2018).

. . . to amend, alter, revoke or terminate this trust . . . by an instrument in writing signed by the Settlor and delivered to the Trustee in the lifetime of the Settlor, or by the Settlor's Last Will and Testament at his death." The trust was never amended or revoked.

(b) Marsh Company, Limited

In 1998, Marsh created Marsh Company, Limited, a partnership used for ownership of his property. He transferred all of his real estate holdings in Richardson County to Marsh Company.

Initially, Marsh owned 100 percent of Marsh Company. In 1998 and 1999, he gave to each of the cotrustees, their spouses, and to a grandson an undivided "65/100ths" of 1 percent limited partnership interest in Marsh Company. Marsh reported these transfers on gift tax returns. In 2001, Marsh made several assignments of an undivided "40/100[ths]" of 1 percent limited interest in Marsh Company to family members. On December 31, 2001, Marsh owned a 91.6-percent interest in Marsh Company.

In 2002, Marsh gave Sarah and Carla each an undivided 26.63-percent limited partnership interest in Marsh Company. He filed a gift tax return with respect to those gifts. He also gave a .456-percent interest to the cotrustees' spouses and to trusts for three of his grandchildren. Marsh's percentage of ownership at the end of 2002 was 36.1 percent. Marsh transferred small amounts of his interest in 2003, 2004, and 2005. On December 31, 2006, Marsh owned a 34.17-percent interest in Marsh Company.

During the August 2019 hearing, Sarah testified that the gifts in Marsh Company came from the trust. But during the September hearing, Sarah testified that when her attorney "pulled out the deeds," she learned that Marsh's ownership in Marsh Company was his individually and was not placed in the trust. She clarified that the trust never held an interest in Marsh Company.

### (c) Marcasa

In 2007, Marsh created Marcasa, a limited liability company. The operating agreement showed members of Marcasa to be Marsh, the cotrustees, the cotrustees' spouses, and the cotrustees in their capacity as trustees of qualified trusts for their respective children. The operating agreement stated that "any Member may transfer all or any part of his or her interest in the Company by gift, in trust or otherwise, to or for the benefit of himself or herself, his or her spouse or his or her descendants." Sarah was not aware of any modifications to the Marcasa operating agreement.

On March 21, 2007, Marsh Company merged into Marcasa and ceased to exist. The membership interests of Marsh, the cotrustees, the cotrustees' spouses, and the trusts for the children of the cotrustees in Marsh Company were converted to membership interests in Marcasa. Sarah was not aware of any additional contributions to Marcasa other than what was in Marsh Company. Approximately 1 month after the merger, Marsh and his wife executed a quitclaim deed to Marcasa, but Sarah stood by her testimony that no additional contributions to Marcasa were made after the merger. She testified that after that transfer, there was no change in Marsh's ownership interest. On December 31, 2007, Marsh held approximately a 34.17-percent interest in Marcasa, just as he had held in Marsh Company at the end of 2006.

On January 2, 2008, Marsh assigned interests of approximately .382 percent in Marcasa to each of the cotrustees, their spouses, and their children's trusts. On May 27, Marsh signed a memorandum of action concerning the trust. With that instrument, he assigned to the trust the ownership of various properties, including Marsh's interest in Marcasa.

Each year from 2009 to 2013, when Marsh assigned a percentage ownership of Marcasa to the cotrustees, their spouses, and their children's trusts, he signed the document as grantor of the trust. From January 31, 2014, to December 31, 2016, the

trust owned a 15.62-percent interest in Marcasa, the cotrustees each owned a 27.92-percent interest, and their spouses and children's trusts each owned a 4.76-percent interest.

### (d) Motion for Continuance

During the August 2019 hearing, the County requested a continuance. The County stated that it needed research on recently discovered deeds. The court continued the hearing from August 14 to September 20.

On September 10, 2019, the County filed a motion to continue. According to the motion, the County needed to engage in formal discovery because certain requested documents had not been provided. The County asserted that it was necessary to have the complete ledger of ownership interests for all years of Marsh Company. The cotrustees objected to a continuance. The court took the motion under advisement and later denied it.

### (e) County's Witnesses

The County adduced testimony from three attorneys and a certified public accountant. One attorney testified that the cotrustees were the only people who could transfer from the trust and that the provisions to effectuate a gift would apply if there were transfers being made by Marsh as grantor of his own trust. The second attorney testified that "[t]he trust property would be under the title or authority of the co-trustees." The third attorney testified that "[a]ssets that are in the trust would be subject to the power over title of the Co-Trustees." In other words, the attorneys testified that the cotrustees were the people who could transfer assets in the trust.

The certified public accountant reviewed a number of documents for Marcasa. The documents included Schedule L forms for tax years 2007 through 2013, the complete 2014 tax return, and two pages of bank statements from 2006. The accountant testified that to properly determine capital contributions, she would need the full tax returns and all bank statements.

### 3. COURT'S ORDER

The county court reasoned that although the trust was the legal owner of Marcasa's interests, Marsh was the beneficial owner of those interests. It noted that Marsh retained authority to change the terms of the trust and that trustees are bound by duties of the Nebraska Uniform Trust Code.

After reciting the elements of a gift, the court determined that tax filings and other documentation showed the transfers were completed and consented to by the legal owner of the interests—the trust. The court overruled the County's objections to the worksheet and stated that the transfers of interests signed by Marsh should be considered. However, the court reduced the valuation discount on Marcasa from 30 percent to 25 percent, thereby increasing the value of the estate by $98,720.50 and the inheritance tax by $987.21.

The County filed a timely appeal, which we moved to our docket.[2]

## III. ASSIGNMENTS OF ERROR

The County alleges, reordered, that the court erred by (1) failing to order published notice, (2) failing to allow a continuance for the County's expert to review the capital contributions made to Marsh Company and Marcasa, (3) determining that certain attempted transfers of ownership shares of Marsh Company and Marcasa were valid transfers that reduced the taxable value of the estate for inheritance tax purposes, and (4) failing to determine that Marsh retained possession or enjoyment of the property he claimed to have transferred to Marsh Company and Marcasa during his lifetime.

## IV. STANDARD OF REVIEW

[1,2] On appeal of an inheritance tax determination, an appellate court reviews the case for error appearing on the

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

record.[3] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4]

[3,4] In reviewing a judgment of the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.[5] The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous.[6]

[5] Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court.[7]

[6] A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.[8]

## V. ANALYSIS

### 1. PUBLICATION OF NOTICE

[7,8] The County asserts that the county court failed to order published notice of the proceeding and that the court thus lacked jurisdiction and "any rulings by the [c]ourt are invalid."[9] It relies on Neb. Rev. Stat. § 77-2018.02 (Supp.

---

[3] *In re Estate of Hasterlik*, 299 Neb. 630, 909 N.W.2d 641 (2018). See, also, *In re Estate of Baer*, 273 Neb. 969, 735 N.W.2d 394 (2007).

[4] *In re Estate of Hasterlik, supra* note 3.

[5] *In re Estate of Karmazin*, 299 Neb. 315, 908 N.W.2d 381 (2018).

[6] *Id*.

[7] *In re Estate of Reed*, 271 Neb. 653, 715 N.W.2d 496 (2006).

[8] *Eddy v. Builders Supply Co.*, 304 Neb. 804, 937 N.W.2d 198 (2020).

[9] Brief for appellant at 19.

2019). The County's argument in brief consists of only 97 words and amounts to little more than a bare recital of its assignment of error, which would ordinarily preclude us from considering the argument.[10] But before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[11] If the court from which an appeal was taken lacked jurisdiction, then the appellate court acquires no jurisdiction.[12] Thus, in order to determine that we have jurisdiction of this appeal, we must determine whether the county court had jurisdiction of the proceeding below. We conclude that it did.

[9] Although the County does not say so, it must be arguing that the statute requires publication to confer subject matter jurisdiction upon the county court. Here, all of the parties were plainly before the court. One who invokes the power of the court on an issue other than the court's jurisdiction over one's person makes a general appearance so as to confer on the court personal jurisdiction over that person.[13] The cotrustees, who were the petitioners, were also the sole beneficiaries of Marsh's trust. They clearly invoked the court's power. The County sought a determination that the entire value of Marcasa was subject to inheritance tax. It thereby invoked the court's power on an issue other than personal jurisdiction. The County does not identify, nor does the record disclose, any other party having an interest in Marsh's estate or in the property of the trust. Because the county court clearly had personal jurisdiction of all of the parties, only the matter of subject matter jurisdiction remains.

---

[10] See *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015) (appellate court will not address argument that does little more than restate assignment of error).

[11] *Cinatl v. Prososki, ante* p. 477, 949 N.W.2d 505 (2020).

[12] *State v. Irish*, 298 Neb. 61, 902 N.W.2d 669 (2017).

[13] *Hunt v. Trackwell*, 262 Neb. 688, 635 N.W.2d 106 (2001).

[10,11] In a general sense, the county court had subject matter jurisdiction. Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.[14] The statute at issue here authorizes an "independent proceeding for the sole purpose of determining the [inheritance] tax."[15] It specifies that the "independent proceeding . . . may be instituted in the county court."[16] We hold that § 77-2018.02(1) confers upon the county court subject matter jurisdiction of an independent proceeding brought for the sole purpose of determining Nebraska inheritance tax.

Here, the cotrustees initiated this type of proceeding. The only remaining question of subject matter jurisdiction is whether the statute requires such jurisdiction to be invoked in a particular manner that specifically demands published notice. We conclude that it does not. Our opinion does not address the nature of publication required by the general notice statute under the probate code.[17]

[12] Applying the usual standard of statutory interpretation, the pertinent language dictates only the method of giving notice of hearing. Basic principles of statutory interpretation require a court to give statutory language its plain and ordinary meaning.[18] Upon the filing of a petition to initiate this type of independent proceeding, the statute requires the court to "order the petition set for hearing" and to "cause notice thereof to be given to all persons interested in the estate of the deceased and the property described in the petition . . . in the manner provided for in subsection (3)."[19] Subsection (3), in turn,

---

[14] *Benjamin M. v. Jeri S., ante* p. 733, ___ N.W.2d ___ (2020).

[15] § 77-2018.02(1).

[16] *Id*.

[17] See Neb. Rev. Stat. § 30-2220 (Reissue 2016).

[18] *State v. Amaya*, 305 Neb. 36, 938 N.W.2d 346 (2020).

[19] § 77-2018.02(2).

requires the notice "provided for by subsection (2)" to be given by "one publication in a legal newspaper of the county."[20] In subsection (2), "notice thereof" refers to the "hearing." Properly understood, publication under this statute is required only to give notice of the hearing.

Section 77-2018.02(2) specifically provides that notice may be dispensed under certain circumstances. Notice is not necessary when no assessment of inheritance tax could result.[21] Nor is published notice required when the county attorney "has executed a waiver of notice upon him or her to show cause, or of the time and place of hearing, and has entered a voluntary appearance in such proceeding in behalf of the county and the State" and either all persons against whom an inheritance tax may be assessed "are either a petitioner or have executed a waiver of notice upon them to show cause, or of the time and place of hearing, and have entered a voluntary appearance" or a party has agreed to pay the full inheritance tax determined.[22] By adding provisions in which notice may be dispensed with, the Legislature signaled that notice is not a jurisdictional prerequisite.

Moreover, the statute requires that the "county attorney of each county in which the property described in the petition is located" be given "personal service of notice of the hearing."[23] This reinforces our understanding of the publication requirement.

[13] In contrast, the first clause of § 77-2018.02(2) plainly mandates "the filing of a petition to initiate such an independent proceeding." In other words, the proceeding is "initiate[d]" by "the filing of a petition." We hold that published notice is not a prerequisite of a county court's subject matter jurisdiction

---

[20] § 77-2018.02(3).

[21] See § 77-2018.02(4).

[22] § 77-2018.02(5).

[23] § 77-2018.02(3).

of an independent proceeding for the sole purpose of determining Nebraska inheritance tax; rather, such jurisdiction is invoked by the filing of a petition to initiate the proceeding. Because that was precisely what happened here, the County's assertion that the county court lacked jurisdiction fails.

[14] Even if notice was not published, any error in failing to do so was harmless. Error without prejudice is not a ground for reversal.[24] Here, the county attorney and the cotrustees—the only persons against whom an inheritance tax may be assessed—were actively involved in this matter from the time of filing of the petition and all appeared at the hearing. The County suffered no prejudice by any lack of published notice of the hearing.

## 2. Failure to Continue Matter

The County argues that the court should have sustained its motion for a continuance. On September 10, 2019, the County filed the motion, asserting that it needed to engage in formal discovery and that "it is necessary to have the complete ledger of ownership interests for all years of Marsh Company." In the County's brief, it argues that a continuance was necessary so that the certified public accountant could determine if the capital accounts of Marsh Company and Marcasa were accurate.

The cotrustees objected to the motion for several reasons. First, they had made arrangements based on the court's scheduling of the second day of trial, including Sarah's application of leave from her employment and Carla's purchase of a non-refundable airline ticket. Next, they noted that for over 1 year, the attorney representing the County had not served any formal discovery. Finally, in urging against further delay, they pointed out that any additional inheritance taxes assessed would draw interest at 14 percent from April 6, 2018.

---

[24] *Connolly v. Connolly*, 299 Neb. 103, 907 N.W.2d 693 (2018).

We find no abuse of discretion by the court in denying a continuance. We are mindful that the petition was filed on March 22, 2018; that such a petition should be set for hearing within 2 to 4 weeks[25]; and that the County's motion was filed nearly 1½ years after the filing of the petition. This assignment of error lacks merit.

### 3. Whether Attempted Transfers Were Effective

The County contends that any attempted transfers of ownership interest in Marsh Company and Marcasa were ineffective. The County's witnesses testified that for transfers to be valid, they had to be executed by the cotrustees, as prescribed by the terms of the trust. The County focuses on the fact that the transfers were executed by Marsh, not the cotrustees.

The evidence established that Marsh conveyed interests in Marsh Company to his family. It also established that the trust never held an ownership interest in Marsh Company. Thus, the County's argument that assignments of ownership interests in Marsh Company were ineffective because they were not made by the cotrustees lacks merit.

The situation differs with respect to Marsh's assignments of interest in Marcasa beginning in 2009. In January 2008, Marsh executed eight assignment forms in his individual capacity. Then, in May, Marsh assigned his interest in Marcasa to his trust. Thereafter, the assignment forms executed between 2009 and 2013 showed that they were signed by Marsh as grantor of the trust.

[15,16] To make a valid inter vivos gift, there must be an intention to transfer title to property, delivery by the donor, and acceptance by the donee.[26] The first two elements relate to intent and actions of the donor. The donor must have a present donative intent and a clear and unmistakable intent to

---

[25] See § 77-2018.02(2).

[26] *Zelenka v. Pratte*, 300 Neb. 100, 912 N.W.2d 723 (2018).

make a gift.[27] Ordinarily, actual delivery is necessary where the subject of the gift is capable of manual delivery, but where actual manual delivery cannot be made, the donor may do that which, under the circumstances, will in reason be considered equivalent to actual delivery.[28] The Ninth Circuit explained that interests in a limited liability company "do not lend themselves to manual delivery. Instead, they are delivered through the execution of papers. As a result, . . . it is somewhat artificial to separate the 'delivery' of [a limited liability company] interest from the intention to donate it."[29] Here, intent and delivery are demonstrated by Marsh's history of assigning interests to his daughters and their family members, his execution of the assignments, and his cessation of acting as the owner of those interests after execution of the assignments.

[17] The final element of a gift calls for action by the donee. The exercise by the donee of dominion over the property which is the subject of a gift, or an assertion of a right to the property by the donee, generally will constitute an acceptance.[30] The donees accepted the gifts by acting as the rightful owner of the interests in Marcasa, and their ownership took effect immediately. Their interests were reported on Schedule K-1 tax forms, thereby subjecting them to payment of income taxes attributable to their ownership interests.

[18] The County contends that no transfer of ownership interests occurred, because the cotrustees never executed any of the transfer documents. But under the trust agreement, Marsh retained authority "to withdraw property from the trust." The trust agreement provided the manner to do so—"by an instrument in writing signed by the Settlor and delivered to the Trustee in the lifetime of the Settlor." Here, the assignments at issue were all in writing. And the cotrustees, as

---

[27] *Id.*

[28] *Id.*

[29] *Linton v. U.S.*, 630 F.3d 1211, 1217 (9th Cir. 2011).

[30] See *Zelenka v. Pratte, supra* note 26.

either the recipients or the spouses or parents of the recipients, were aware of the assignments. Further, we have stated that whether a deed or other instrument conveying an interest in property has been delivered is largely a question of intent to be determined by the facts and circumstances of the particular case.[31] Marsh's parting with the ownership interests given as gifts and the cotrustees and other donees acting as owners of those respective interests manifest evidence of delivery. The court's decision conforms to the law, is supported by competent evidence, and is not unreasonable.

### 4. Possession and Enjoyment Post-Transfer

The County asserts that Marsh continued to retain an ownership interest in the claimed transfers and that thus, the total value of Marcasa should be subject to inheritance tax. We disagree.

The County relies upon *In re Estate of Fries*,[32] but that case provides little guidance. *In re Estate of Fries* concerned whether the value of real property should be part of the decedent's augmented estate in calculating his widow's elective share. In the decedent's lifetime, he transferred his entire interest in real estate to his children, but he continued to perform management functions for, receive income from, and pay taxes on the properties. We noted that "in the case of real property, the terms 'possession' and 'enjoyment' have been interpreted to mean 'the lifetime use of the property.'"[33]

Here, Marsh engaged in a pattern of transferring ownership interests to his family for nearly 20 years. He, and then his trust, retained an interest in Marcasa. Although Marsh was the manager of Marcasa, neither he nor the trust ever owned a majority interest in the limited liability company. And as his

---

[31] *Caruso v. Parkos*, 262 Neb. 961, 637 N.W.2d 351 (2002).

[32] *In re Estate of Fries*, 279 Neb. 887, 782 N.W.2d 596 (2010).

[33] *Id.* at 894-95, 782 N.W.2d at 603.

ownership interest decreased, so too did his share of Marcasa's income. Tax records show that the cotrustees, their spouses, and their children were subject to federal income taxes based upon their interests in Marcasa. Competent evidence supports the court's decision to not subject 100 percent of Marcasa to inheritance tax.

## VI. CONCLUSION

We conclude that published notice of the hearing was not a prerequisite of the county court's subject matter jurisdiction and that even if notice was not published, the County suffered no prejudice. We find no abuse of discretion in the overruling of the County's motion for a continuance. Finally, we conclude that the court's determination that ownership interests in Marcasa were validly transferred from the trust conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

AFFIRMED.