Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:09 PM CDT

In re Guardianship of Patrick W.,
an incapacitated person.
Becky S., appellee, v.
Patrick W., appellant.

___ N.W.3d ___

Filed April 19, 2024.    No. S-23-209.

1. **Estates: Judgments: Appeal and Error.** An appellate court reviews
   probate cases for error appearing on the record made in the county court.
   When reviewing a judgment for errors appearing on the record, the
   inquiry is whether the decision conforms to the law, is supported by com-
   petent evidence, and is neither arbitrary, capricious, nor unreasonable.
2. **Decedents' Estates: Appeal and Error.** An appellate court, in review-
   ing a probate court judgment for errors appearing on the record, will
   not substitute its factual findings for those of the probate court where
   competent evidence supports those findings.
3. **Statutes: Appeal and Error.** Statutory interpretation is a question of
   law, which an appellate court resolves independently of the trial court.
4. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings
   under the residual hearsay exception, an appellate court reviews for
   clear error the factual findings underpinning a trial court's hearsay rul-
   ing and reviews de novo the court's ultimate determination to admit evi-
   dence over a hearsay objection or exclude evidence on hearsay grounds.
5. **Appeal and Error.** In a de novo review, an appellate court reaches a
   conclusion independent of the trial court.
6. **Statutes: Legislature: Intent.** In construing a statute, a court must
   determine and give effect to the purpose and intent of the Legislature
   as ascertained from the entire language of the statute considered in its
   plain, ordinary, and popular sense.
7. **Statutes.** It is not within the province of a court to read a meaning into
   a statute that is not warranted by the statute's language. Nor is it within
   the province of a court to read anything plain, direct, or unambiguous
   out of a statute.

8. **Statutes: Words and Phrases.** Words and phrases in a statute shall be construed and understood according to the common and approved usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning.

9. **Statutes.** A court must give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

10. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

11. **Statutes.** When possible, a court will try to avoid a statutory construction that would lead to an absurd result.

12. ____. To the extent there is a conflict between two statutes, the specific statute controls over the general statute.

13. **Guardians and Conservators: Guardians Ad Litem: Evidence.** In guardianship proceedings, the information specifically described in the first sentence of Neb. Rev. Stat. § 30-4204 (Reissue 2016) is admissible in evidence when the proponent shows such information or material (1) was obtained by the guardian ad litem informally or by subpoena and (2) is regarding the person for whom the guardian ad litem was appointed.

14. **Appeal and Error.** Conclusory assertions unsupported by coherent analytical argument fail to satisfy the requirement that an appellant's brief must both specifically assign and specifically argue errors.

Appeal from the County Court for Saunders County: ANDREW R. LANGE, Judge. Affirmed.

Adaline K. Baker for appellant.

Heather S. Colton, of Pollack & Ball, L.L.C., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

STACY, J.

Patrick W. appeals from an order of the county court finding him to be incapacitated and appointing a permanent guardian. He assigns error to the admission of an exhibit over his

hearsay objection, and he argues that without that exhibit, the evidence was insufficient to show he is incapacitated. We affirm the county court's order.

## I. BACKGROUND

In 2009, Patrick suffered a stroke at the age of 32. In 2014 or 2015, Adult Protective Services (APS), a division of the Nebraska Department of Health and Human Services, opened an investigation due to concerns about Patrick's medical needs and financial management. After working with him for several years, an APS caseworker was concerned that Patrick was vulnerable to financial exploitation, self-neglect, and undue influence. The APS caseworker contacted an attorney to inquire about establishing a guardianship, and Becky Stamp was identified as someone who was willing to serve as Patrick's guardian.

### 1. Petition for Guardianship

In 2022, Stamp filed a verified petition in the county court for Saunders County seeking to be appointed as Patrick's temporary and permanent guardian. The petition alleged that Patrick was incapacitated due to a stroke and that he lacked sufficient understanding or capacity to make or communicate responsible decisions concerning his person and property.[1]

The court appointed Stamp to serve as Patrick's temporary guardian. A few months later, Patrick moved to substitute his cousin, Terry Crandall, as his temporary guardian, and the court granted that motion. The court also appointed an attorney to serve as Patrick's guardian ad litem (GAL) and ordered Patrick to undergo a neuropsychological evaluation at a rehabilitation hospital.

In October 2022, the neuropsychological evaluation was completed, and a written report was prepared. The admissibility of that report is the primary issue on appeal.

---

[1] See Neb. Rev. Stat. § 30-2601(1) (Reissue 2016) (defining incapacitated person).

## 2. Guardianship Hearing

An evidentiary hearing on the guardianship petition was held in January 2023. Stamp and Patrick both appeared for the hearing with counsel, and Patrick's GAL was also present. The county court received several exhibits into evidence and heard testimony from six witnesses, including Patrick. As relevant to the issues on appeal, we summarize the witness testimony and discuss two of the hearing exhibits.

### (a) GAL Report

The GAL did not testify at the hearing, but her report was admitted into evidence without objection after the parties agreed to redact certain statements within it. The GAL's report recommended a full guardianship based on her opinion that without assistance, Patrick was not able to maintain safe and appropriate independent housing, arrange for his medical care and comply with medical instructions, protect his personal effects, apply for governmental benefits to which he may be entitled, or independently receive and manage his money and property.

The GAL described her personal observations that Patrick struggled to follow a consistent timeline and had difficulty answering questions and accurately recalling information and events. The GAL also expressed concern that Patrick would not talk or meet with her unless his roommate and landlord, Rodney Volker, was also present. The GAL noted that Patrick allowed Volker to speak for him and that Patrick appeared susceptible to Volker's influence.

The GAL's report stated that she had received and reviewed the neuropsychological evaluation report ordered by the court and believed the report supported her conclusion that a full guardianship was appropriate. The GAL's report quoted several statements from the neuropsychological report, including that Patrick's diagnosis was "Major Neurocognitive Disorder" and that Patrick's neurological testing revealed "significant global impairment, including in the domains of

attention/processing speed, language, memory, visuospatial functioning, and executive functioning" and "significant expressive aphasia."

(b) Neuropsychological Report

At the start of the guardianship hearing, Patrick's counsel moved in limine to exclude the neuropsychological report as inadmissible hearsay. In response, Stamp argued the report was admissible under Neb. Rev. Stat. § 30-4204 (Reissue 2016), which provides, in relevant part:

> The guardian ad litem may obtain, informally or by subpoena, the following information regarding the person for whom the guardian ad litem has been appointed: (1) A report from any medical provider [or] provider of psychological services . . . . Any material obtained by a guardian ad litem pursuant to this section is admissible in evidence.

The county court overruled Patrick's motion in limine.

Later during the hearing, Patrick's counsel renewed the hearsay objection when Stamp offered the neuropsychological report as an exhibit. Counsel argued that despite the admissibility provision in § 30-4204, "the rules of evidence still apply," and counsel asked the court to exclude the report because it contained inadmissible hearsay. Stamp disagreed and reiterated her position that the report was admissible in evidence under the plain language of § 30-4204 because it was a medical or psychological report obtained by the GAL regarding the person for whom she was appointed. Before ruling on the objection, the court took a short recess for the stated purpose of giving the parties an opportunity to consult and agree to redactions of the neuropsychological report. After conferring, the parties advised the court they could not reach an agreement; the court overruled the hearsay objection and received the entire neuropsychological report into evidence.

As relevant to the issues on appeal, the neuropsychological report concluded that Patrick met the criteria for a diagnosis

of "Major Neurocognitive Disorder Due to Another Medical Condition (history of a stroke), with Behavioral Disturbance." The report also described that Patrick has "expressive aphasia" and struggles significantly to convey his thoughts, noting that during the neuropsychological evaluation, Patrick spoke very little, and when he did speak, the evaluator had difficulty understanding him. The report indicated that Patrick's neuropsychological testing revealed significant global impairment in the domains of attention/processing speed, language, memory, visuospatial functioning, and executive functioning. In the evaluator's clinical judgment, Patrick's poor judgment and insight placed him at a "significantly increased risk" of emotional, financial, sexual, and other exploitation and manipulation. The neuropsychological report concluded:

> Due to his current level of functioning, it is the clinical judgment of this provider that [Patrick] would best be served by the assignment of a permanent guardian to ensure facilitation of safe decision-making and to procure for ongoing needs. I can say with a reasonable degree of certainty that these deficits are unlikely to improve to the point where he would not need this level of support, given that it has been over 10 years since his stroke.

### (c) Witness Testimony

#### (i) Stamp's Case in Chief

During Stamp's case in chief, three witnesses were called to testify. The APS caseworker testified about her history working with Patrick and her concern that his cognitive deficits caused him to neglect his own care. She also testified about concerns that Patrick was being financially exploited by Volker.

Stamp testified that she too was concerned about Volker's financial influence on Patrick, explaining that during the time she served as Patrick's temporary guardian, Volker "always called and asked for money. Never Patrick." Stamp also testified that she was concerned about Patrick's ability to maintain eligibility for Medicaid benefits without a guardian.

Crandall testified that while she served as Patrick's temporary guardian, it was challenging to assess Patrick's well-being because Volker was always present when she tried to talk with Patrick and Volker would influence the discussion. Crandall testified that Patrick would answer the telephone when she called but that "within the next minute or so, [Volker] is on the phone telling me what I will or what I will not do." She also testified that there were instances where Volker had texted her from Patrick's cell phone posing as Patrick. Crandall testified that she had known Patrick since he was 18 years old, and based on her interactions with him since 2022, she believed he needed a permanent guardianship.

*(ii) Patrick's Case in Chief*

During Patrick's case in chief, three witnesses were called to testify. Patrick testified on his own behalf. He generally opposed establishing a guardianship, explaining it was not something he needed. Patrick testified that Volker "helps [him] a lot" and that Volker is "a good accountant." Some of Patrick's testimony was difficult to follow and not responsive to the question being asked. For instance, when asked why he objected to the guardianship, Patrick stated:

Guardianship? Because it's in — I do — I wake up, I go and take my meds, go to transportation, go to Walmart, groceries, back home, whatever — in and out. The kitchen, check the mail, and that's it. So either — I don't know, there's nothing else. I mean, there's making other friends, like making friends. I like it, so.

A witness, who described herself as a mutual friend of Patrick's and Volker's, testified that she had known Patrick for 2 or 3 years and had seen no evidence that Patrick could be taken advantage of in his current living situation. She testified that although Patrick was slow to answer questions, she thought his answers were appropriate. She also thought that since moving in with Volker, Patrick looked healthier and seemed happier than he was previously.

Volker testified that he had known Patrick for more than a decade and reconnected with him in 2021. When they reconnected, Volker observed Patrick to be "[w]orse than homeless," and "[h]e was nothing like he is today." Volker testified that Patrick does his own cooking, laundry, bedsheets, and vacuuming. Volker transported Patrick to appointments, to the grocery store, and to visit Patrick's stepmother, and Patrick paid Volker for gas. Volker expressed concerns about Patrick's ability to access funds if Crandall were to become his permanent guardian. Volker admitted to interfering with Patrick's conversations with Crandall, but he did not think Patrick needed a guardian because "he's just as normal as anybody else."

At the close of the evidence, the court took the matter under advisement and requested written closing arguments.

### 3. County Court Order

In an order entered February 15, 2023, the court found clear and convincing evidence that Patrick was incapacitated. The court determined that a full guardianship was the least restrictive alternative available and appointed Crandall to serve as Patrick's permanent guardian. Patrick filed this timely appeal, which we moved to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Patrick assigns, restated, that the county court erred in (1) receiving the neuropsychological report into evidence over his hearsay objection and (2) finding that he is incapacitated and that a full guardianship is the least restrictive means available to provide for his continuing care.

## III. STANDARD OF REVIEW

[1] An appellate court reviews probate cases for error appearing on the record made in the county court.[2] When reviewing a judgment for errors appearing on the record, the

---

[2] *In re Guardianship of Jill G.*, 312 Neb. 108, 977 N.W.2d 913 (2022).

inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

[2] An appellate court, in reviewing a probate court judgment for errors appearing on the record, will not substitute its factual findings for those of the probate court where competent evidence supports those findings.[4]

[3] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[5]

[4,5] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.[6] In a de novo review, an appellate court reaches a conclusion independent of the trial court.[7]

## IV. ANALYSIS

### 1. Admissibility of Materials Obtained Pursuant to § 30-4204

The primary issue on appeal is the admissibility of information and material obtained by a GAL pursuant to § 30-4204. That statute provides in full:

> The guardian ad litem may obtain, informally or by subpoena, the following information regarding the person for whom the guardian ad litem has been appointed: (1) A report from any medical provider, provider of psychological services, law enforcement, [APS] agency, or financial institution; and (2) any account or record of

---

[3] *Id.*

[4] *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023).

[5] *In re Guardianship of Jill G., supra* note 2.

[6] *In re Estate of Walker, supra* note 4.

[7] *Id.*

any business, corporation, partnership, or other business
entity which such person owns or in which such person
has an interest. *Any material obtained by a* [*GAL*] *pursu-
ant to this section is admissible in evidence.*[8]

Patrick does not dispute that the neuropsychological report
at issue pertained to him, nor does he dispute that it is prop-
erly characterized as "[a] report from any medical provider
[or] provider of psychological services" within the meaning of
§ 30-4204. And although Patrick argues there was no evidence
the GAL obtained the neuropsychological report pursuant to
§ 30-4204, the record refutes that argument because the GAL's
report, which was admitted into evidence without objection,
plainly lists the neuropsychological report as one of the reports
obtained by the GAL as part of her investigation.

As such, the only disputed issue regarding § 30-4204 is the
proper interpretation of the final sentence, which provides:
"Any material obtained by a [GAL] pursuant to this section
is admissible in evidence." To address this issue, we begin by
reviewing the familiar rules of statutory construction that guide
our analysis.

[6-8] In construing a statute, a court must determine and
give effect to the purpose and intent of the Legislature as
ascertained from the entire language of the statute considered
in its plain, ordinary, and popular sense.[9] It is not within the
province of a court to read a meaning into a statute that is not
warranted by the statute's language.[10] Nor is it within the prov-
ince of a court to read anything plain, direct, or unambiguous
out of a statute.[11] Words and phrases in a statute "shall be con-
strued and understood according to the common and approved

---

[8] § 30-4204 (emphasis supplied).

[9] *Angel v. Nebraska Dept. of Nat. Resources*, 314 Neb. 1, 988 N.W.2d 507
(2023).

[10] See *id.*

[11] See *id.*

usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning."[12]

[9-12] A court must give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[13] Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[14] When possible, a court will try to avoid a statutory construction that would lead to an absurd result.[15] To the extent there is a conflict between two statutes, the specific statute controls over the general statute.[16]

With these principles in mind, we turn to the arguments of the parties.

### (a) Arguments of Parties

Patrick argues that courts should not construe the last sentence of § 30-4204 to preclude applicability of the Nebraska Evidence Rules and, in particular, the hearsay rules when determining the admissibility of information and materials obtained by a GAL. Patrick urges us to construe the phrase "admissible in evidence" to mean "anything admissible under the court's Rules of Evidence."[17]

Stamp disagrees. At oral argument before this court, Stamp's counsel argued that the plain and ordinary meaning of the

---

[12] Neb. Rev. Stat. § 49-802(5) (Reissue 2021).

[13] *In re Guardianship of Nicholas H.*, 309 Neb. 1, 958 N.W.2d 661 (2021).

[14] *Id.*

[15] See *Thomas v. Peterson*, 307 Neb. 89, 948 N.W.2d 698 (2020).

[16] *State v. Simons*, 315 Neb. 415, 996 N.W.2d 607 (2023).

[17] Brief for appellant at 11.

statutory phrase "admissible in evidence" means "proper to be received" in evidence. She generally described the admissibility provision in § 30-4204 as a "carve out" to the rules of evidence, and she argued that when the conditions of the statute are met, the materials specifically described in § 30-4204 can properly be admitted into evidence over a hearsay objection. To support this argument, Stamp's appellate brief generally relies on our 2022 opinion in *In re Guardianship of Jill G.*[18]

The issue in *In re Guardianship of Jill G.* was the admissibility of a GAL's written report. That report was 8 pages long and included as an attachment approximately 80 pages of material the GAL had obtained pursuant to § 30-4204. When the petitioner offered the GAL's report with attachments, the court sustained the respondent's hearsay objections and refused to receive the exhibit into evidence. The petitioner tried several more times to offer the exhibit without success, but at no time did she attempt to separately offer only the materials obtained pursuant to § 30-4204. On appeal, the petitioner argued the court erred in failing to admit the entire GAL report under § 30-4204.

We found no error in that case, reasoning that the plain terms of the admissibility provision in § 30-4204 referenced only the materials a GAL is empowered to obtain as part of his or her investigation and "does not pertain to a report created by a GAL."[19] We noted that GAL reports are governed by a separate statute that, unlike § 30-4204, contains no provision governing admissibility.[20] The opinion in *In re Guardianship of Jill G.* emphasized that it is "the proponent's responsibility to separate the admissible and inadmissible parts" of an exhibit and noted that "[w]hen part of an exhibit is inadmissible, a

[18] *In re Guardianship of Jill G., supra* note 2.

[19] *Id*. at 113, 977 N.W.2d at 918.

[20] See Neb. Rev. Stat. § 30-4205 (Reissue 2016).

trial court has discretion to reject the exhibit entirely or to admit the admissible portion."[21] Because the petitioner in *In re Guardianship of Jill G.* had not separately offered just the materials obtained by the GAL pursuant to § 30-4204, we found no abuse of discretion in refusing to admit the entire GAL report. And we expressly declined to separately consider the admissibility of the information and materials obtained by the GAL pursuant to § 30-4204.

Although our opinion in *In re Guardianship of Jill G.* did not address whether materials obtained by a GAL pursuant to § 30-4204 are admissible over a hearsay objection, we moved the instant appeal to our docket to address that question. We turn to it now.

## (b) Resolution

Section 30-4204 contains two sentences, and we consider them both when construing the meaning of the statute. The first sentence describes several categories of information that GALs are authorized to obtain, either informally or by subpoena, regarding the person for whom they have been appointed. And the second sentence of the statute provides, without further condition, that "[a]ny material obtained by a guardian ad litem pursuant to this section is admissible in evidence."[22]

Black's Law Dictionary defines "admissible" as "[c]apable of being legally admitted; allowable; permissible,"[23] and it defines "admissible evidence" as "[e]vidence that is relevant and is of such a character . . . that the court should receive it."[24] We think these common definitions are appropriately applied to the phrase "admissible in evidence" as it is used in § 30-4204. As we will explain, in enacting § 30-4204, we

---

[21] *In re Guardianship of Jill G., supra* note 2, 312 Neb. at 114-15, 977 N.W.2d at 918-19.

[22] § 30-4204.

[23] Black's Law Dictionary 58 (11th ed. 2019).

[24] *Id.* at 698.

understand the Legislature to have determined that it is "allowable" or "permissible" for a court to admit into evidence the materials specifically described in the statute, but that the admission of such materials is not mandatory.

We consider it significant that, unlike admissibility provisions found elsewhere in the Nebraska statutes, the admissibility language in § 30-4204 is neither mandatory,[25] nor expressly conditioned on compliance with the Nebraska Evidence Rules.[26] Instead, the plain language of § 30-4204 makes the information specifically described in the first sentence of the statute "admissible in evidence" without further qualification. We see no ambiguity in the phrase "admissible in evidence," and we construe it according to its plain language and its common usage in the law to mean that courts are permitted, but not required, to receive such information into evidence.

As such, although Patrick is correct that the Nebraska Evidence Rules generally apply in probate proceedings, we reject his argument that the phrase "admissible in evidence" in § 30-4204 must be construed to mean otherwise admissible

---

[25] Cf., Neb. Rev. Stat. § 13-2805 (Reissue 2022) (providing "the book or pamphlet shall be received as evidence"); Neb. Rev. Stat. § 15-735 (Reissue 2022) (providing certified copy "shall be received in evidence as prima facie evidence of the regularity of all proceedings in the matter"); Neb. Rev. Stat. § 21-1404 (Reissue 2022) (providing certified copies of articles of incorporation "shall be received in all the courts of this state as prima facie evidence of the facts contained therein and of the due incorporation of such association").

[26] Cf., Neb. Rev. Stat. § 27-402 (Reissue 2016) (providing "[a]ll relevant evidence is admissible except as otherwise provided by" federal or state Constitution, federal or state statutes, other rules of evidence, or rules of Nebraska Supreme Court); Neb. Rev. Stat. § 27-412 (2)(a) (Cum. Supp. 2022) (providing that evidence described in statute "is admissible, if otherwise admissible under the Nebraska Evidence Rules"); Neb. Rev. Stat. § 27-1005 (Reissue 2016) (providing that contents of official record "if otherwise admissible" may be proved through evidence described in statute).

under the rules of evidence. The construction urged by Patrick would require that we read qualifying language into the statute that was not included by the Legislature. Instead, to the extent the admissibility provision in § 30-4204 conflicts with the rules of evidence, we conclude that § 30-4204 is the more specific provision, and thus controls over the more general statutes.[27]

[13] We now hold that in guardianship proceedings, the information specifically described in the first sentence of § 30-4204 is admissible in evidence when the proponent shows such information or material (1) was obtained by the GAL informally or by subpoena and (2) is regarding the person for whom the GAL was appointed.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion,[28] and on this record, we find no abuse of discretion in admitting the neuropsychological report pursuant to § 30-4204 over Patrick's hearsay objection. In fact, we note that Nebraska's hearsay rule expressly contemplates the possibility that "other rules adopted by the statutes of the State of Nebraska" might render admissible what would otherwise be considered inadmissible hearsay under the rules of evidence.[29]

The record shows that the neuropsychological report is a medical or psychological report obtained by the GAL regarding the person for whom she was appointed, and thus fits squarely within the categories of information identified in

---

[27] See *Simons, supra* note 16.

[28] See, generally, *Douglas Cty. Sch. Dist. No. 10 v. Tribedo, LLC*, 307 Neb. 716, 950 N.W.2d 599 (2020).

[29] Neb. Rev. Stat. § 27-802 (Reissue 2016). See, also, *In re Guardianship of Jill G., supra* note 2, 312 Neb. at 113, 977 at 918 (noting "[w]e have applied the principle that in the absence of admissibility authorized by the Nebraska Evidence Rules or by other statute as a nonhearsay statement or statements otherwise exempted or excluded from the operation or purview of the 'hearsay rule,'. . . a hearsay statement will be excluded").

§ 30-4204. Because the conditions of the statute were met, the trial court was permitted to admit the report into evidence, and it did not abuse its discretion in doing so. Patrick's first assignment of error has no merit.

## 2. Sufficiency of Evidence

[14] Patrick's second assignment of error is that there was insufficient evidence adduced to support the county court's finding that he is incapacitated and that a full guardianship is the least restrictive alternative. He argues that "[t]he only evidence offered showing [he] might have a mental deficiency" was the neuropsychological report.[30] And he contends that without that report, "there is no evidence that [he has] a mental deficiency that affects his ability to understand or the capacity to make or communicate decisions for himself."[31] Although Patrick's brief alludes to other alleged deficiencies in the evidence, we do not discuss them, because conclusory assertions unsupported by coherent analytical argument fail to satisfy the requirement that an appellant's brief must both specifically assign and specifically argue errors.[32] We therefore confine our analysis to Patrick's argument that without the neuropsychological report, there was insufficient evidence to support the court's guardianship.

We reject this argument as meritless. As we have already explained, it was proper for the court to admit the neuropsychological report into evidence. And our review of the record, including the neuropsychological report, shows ample evidence to support the court's finding that Patrick is incapacitated and that a full guardianship is the least restrictive alternative to provide for his continuing care or supervision.[33]

---

[30] Brief for appellant at 15.

[31] *Id*.

[32] See, *State v. Boppre*, 315 Neb. 203, 995 N.W.2d 28 (2023); *State v. Trail*, 312 Neb. 843, 981 N.W.2d 269 (2022).

[33] See, generally, Neb. Rev. Stat. § 30-2620 (Reissue 2016).

The court's decision conformed to the law, was supported by competent evidence, and was neither arbitrary, capricious, nor unreasonable.

## V. CONCLUSION

For the foregoing reasons, we affirm the order of the county court.

Affirmed.