IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE ESTATE OF HYDE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE ESTATE OF DEAN R. HYDE, DECEASED.

JAMES M. WORSHAM, PERSONAL REPRESENTATIVE OF THE ESTATE OF

DEAN R. HYDE, APPELLANT,

V.

DIANE SMITH ET AL., APPELLEES.

Filed December 23, 2025.    No. A-24-937.

Appeal from the County Court for Cheyenne County: RANDIN R. ROLAND, Judge. Affirmed.

Robert M. Brenner for appellant.

Susan J. Spahn and Andrew T. Schlosser, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellees.

PIRTLE, BISHOP, and FREEMAN, Judges.

FREEMAN, Judge.

## I. INTRODUCTION

James M. Worsham appeals the order of the Cheyenne County Court removing him as personal representative of the estate of Dean R. Hyde. Worsham argues that the court erred by removing him without proper notice under Neb. Rev. Stat. § 30-2220 (Reissue 2016). Worsham asserts that the court abused its discretion by removing him as personal representative without cause. Worsham further argues that the county court abused its discretion in removing him absent a validly filed petition. Finally, Worsham contends that the court failed to recognize that, as

- 1 -

personal representative, he retained the authority to act to preserve the estate. For the reasons set forth below, we affirm.

## II. BACKGROUND

Hyde died in September 2021, leaving a validly executed will dated April 17, 2017. In his will, Hyde appointed Worsham to serve as his personal representative. Hyde's will provided in relevant part:

(a) I direct that all my lawful debts shall be paid by my Personal Representative.

(b) I direct my Personal Representative to deliver such items of personal property to those persons so designated as soon after the same have been inventoried and appraised in my estate.

(c) I give Worsham, my residence and the 160 acres upon which located, additional farm ground, all farm machinery, equipment, implements and vehicles, all personal vehicles, and all my share of all crops growing as of the date of my death.

(d) I grant to Worsham, an option to lease any part or all the agricultural land which I own on the date of my death for a term of fifteen (15) years after the date of my death.

(e) Worsham must be involved in the actual farming operations and not custom farm said agricultural land.

Worsham had worked as Hyde's farm manager for many years, and following Hyde's death, Worsham contacted Hyde's attorney, Steve Mattoon, regarding estate administration. On September 23, 2021, Worsham filed an application for informal probate of Hyde's will and requested appointment as personal representative. The county court approved his appointment, and the will was later formally admitted to probate in October 2021.

Over the next eight months, Worsham met with Mattoon 29 times and spoke by phone 35 times to discuss estate concerns. Mattoon advised Worsham that, due to limited liquidity and projected inheritance tax, the farm should continue operating to generate income to pay debts and administrative costs. Mattoon instructed Worsham to track his time and expenses as personal representative and recommended that estate machinery devised to Worsham remain in the estate while Worsham earned a salary.

Following the submission of the application for informal probate, Mattoon informed the heirs by email that the will had been filed with the court and listed the expected Nebraska inheritance tax percentages. On October 21, 2021, Mattoon provided a status report that explained that growing crops were devised to Worsham and that Worsham would continue operating under the same financial arrangements established by Hyde for farming operations for the 2022 crops. However, Mattoon's status report did not specifically state Worsham would be paid a salary by the estate. General ledger reports showed that Worsham received a payment in the amount of $5,500 on October 1, 2021.

After the October 2021 email, Worsham continued paying himself a salary of $5,500 per month from estate funds while living rent free in Hyde's former residence. Worsham's total payroll was listed as $24,000 for 2021 and an estimated $72,000 for 2022, with $5,370 in payroll tax withholdings each year. Worsham's responsibilities included farming, maintenance, and building

work, which he believed justified his monthly payments. In determining Worsham's salary, Mattoon considered statutory factors such as the number of acres Worsham handled and the fact that he now farmed full-time. Worsham relied on Mattoon's advice in paying himself a monthly salary, but neither the court nor the heirs gave consent to the arrangement. Hyde's previous certified public accountant indicated that Worsham's payroll was reasonable given his position; however, she did not review any tax worksheets or deductions prepared by Mattoon.

On February 25, 2022, Mattoon informed the heirs that Worsham "[a]s the operator on behalf of the estate, very much would like to continue with the farming operations until all taxes, costs of administration and indebtedness have been paid in full. In order to do so, this would require a commitment by all interested parties." Mattoon estimated that inheritance tax would be approximately $200,000 and included other relevant figures in the interim report related to the estate. Dr. William Hyde, Hyde's brother and heir, responded by stating that the numbers pertaining to inheritance tax in the interim report were grossly incorrect. Mattoon also provided a status update on current agricultural operations, in which he clarified that Worsham "has been paid and will continue to be paid a monthly salary of $5,500 for all farming operations, which is the same amount which was paid to him by [Hyde] for several years."

In early April 2022, Worsham filed an inheritance tax worksheet listing only Nebraska real property and failed to include any tangible personal property. The worksheet valued the estate at $1,161,600, calculated an inheritance tax of $39,226.38, and included deductions of $432,605.24. These deductions included $79,700 in attorney fees; $395,792 in total administrative expenses, which included costs of continued operation; and $322,991 in total debt. When calculating administrative expenses to include costs of daily operation, Mattoon relied upon the notion that "it was just common sense that the expenses had to be paid . . . so that we could get the income to pay the taxes, costs of administration, and debts." Mattoon estimated attorney and personal representative fees but obtained operating cost estimates from Worsham. The county attorney approved the administrative expenses. Alongside the April worksheet, Worsham filed a petition for determination of inheritance tax.

In late April 2022, Mattoon again emailed the devisees to explain that only Nebraska real estate was taxable, and, because of the debts and costs, the estate would need to remain open and the farm operating for at least two years. The county attorney concurred. William proposed that his family was willing and able to pay any inheritance tax assessed individually. Some heirs even offered to help pay estate debts, but Worsham rejected these offers.

In May 2022, Worsham and a grant writer sent a letter to the devisees describing the estate's financial situation. The letter listed $433,203 in obligations, including estate taxes of $39,446; loans existing at death totaling $248,610; legal fees of $113,150; and $32,000 in personal representative fees. Worsham warned that the Farm Service Agency regulations limited farming to three years and projected revenues would likely not cover debts within that time.

Worsham proposed three options. First, transfer the farmhouse, equipment, vehicles, and 320 acres to him, which would reduce estate debt by $200,600. Second, divide debts among all devisees either immediately or after the 3-year farming period. Third, auction land inherited by the nieces and nephews. As a fourth suggestion, Worsham offered to buy out the entire estate by paying each devisee 33 percent of land value plus a $50 per acre premium.

Angela Reiter and Annon Reiter, Dean Kerl and David Kerl, Rixi Melton, and Harold and Heather Hyde were heirs of Hyde. Worsham valued the Reiters' land at $114,093.40; the Kerls' at $133,150; Melton's at $62,685; and Heather Hyde's at $43,730. Mattoon did not assist in drafting the proposal nor did he review the values before distributing the letter to the heirs. However, Mattoon recommended the heirs consider accepting the proposal. Worsham could not explain why attorney fees had risen $33,000 from the original tax inheritance worksheet filed in April 2022, or how administrative expenses had reached $433,203, compared to the $432,605.24 reported in April. Three devisees rejected the offer.

The following month, Worsham used estate funds to pay off a $9,583.02 loan on a BMW devised to him in Hyde's will. Mattoon directed the payment to be made before transfer, believing that the will's debt payment clause authorized the reduction and reasoned that it relieved the estate of upkeep responsibilities. The next day, in June 2022, Mattoon withdrew as counsel. Subsequently, Robert Brenner entered an appearance on Worsham's behalf.

By August 2022, Worsham had filed a second inheritance tax worksheet that included intangible items not subject to tax. This worksheet valued the land much higher, at nearly $2.9 million, but claimed far fewer deductions. The county attorney also approved this filing. In providing Worsham with the updated values, Brenner clarified that Mattoon had omitted certain intangible property in the first worksheet, which accounted for the large disparity between this worksheet and the April filings. After receiving Worsham's below market offer for his niece and nephews' farmland, William filed a notice of termination of year to year leases and notice to quit against Worsham for lands Worsham was farming for William and Hyde L.L.C. Worsham was directed to deliver possession of the farm property by February 2023.

In September 2022, Worsham exercised his option to lease any or all the agricultural land Hyde owned on the date of his death for a term of 15 years after the date of Hyde's death in accordance with Hyde's will. Worsham believed that continuing to farm the estate land was intended to benefit the estate, though tax returns later showed that the estate lost $91,625 in the first year and $43,772 in the second. A second amended inventory was also filed, reflecting higher valuations for several parcels of land devised to the heirs than what was offered in Worsham's May offer letter. Worsham could not explain why the land values in his offer were lower than those recorded in the amended inventory worksheet.

Three days after the filing of the second amended inventory, the county court heard the devisees' objections to Worsham's supplemental petition for inheritance tax determination. The Kerls were represented by attorney James Korth alongside the other interested heirs. In December 2022, the court ruled that certain disputed assets were tangible personal property subject to inheritance tax and that the BMW and IRA were properly included in the taxable estate.

Following the December 2022 order, between February and March 2023, Worsham conveyed to himself 6 automobiles and 11 pieces of machinery and equipment devised to him in the will, after the estate had paid for repairs and upkeep. These items passed to Worsham free of encumbrances. Interim accounting reports listed a total of $46,542.09 spent on repairs and maintenance for property distributed to Worsham. Worsham reported that he did not intend to reimburse the estate for these payments. Additionally, Worsham used estate equipment on non-estate land and retained cash rents from that work without paying equipment rent to the estate.

Worsham relied on Mattoon's guidance that he did not need to pay the estate rent for use of the equipment on exterior land.

Worsham's counsel then circulated a third inheritance tax worksheet to the heirs allocating deductions to Worsham that were not chargeable against the property he received. Worsham also divided administrative expenses and unsecured debts proportionally among the devisees, rather than to the property specifically devised. Three days later, the devisees petitioned to remove Worsham as the personal representative. The court's certificate of service reflected notice to the Kerls by first class mail and to Worsham by electronic service to his attorney.

Despite the pending petition, in May 2024, Worsham personally borrowed a loan from the bank to pay off the $80,030.11 balance on a Magnum tractor that secured estate debt. Worsham then conveyed the $210,000 tractor to himself. Prior security agreements had given the bank liens on estate equipment and the estate had already reduced the tractor loan balance from $123,515 to $80,030.11. Worsham believed that he was acting to preserve the estate since estate funds were insufficient to cover the debt. A loan officer transferred the tractor to Worsham, despite the bank's security interest in the equipment. The loan officer did not consult the other heirs before making the transfer.

The court entered multiple orders continuing and resetting the hearing on the petition to remove. Court generated certificates of service confirm that notice was provided to all parties, including the Kerls, by mail and Worsham's attorney by email. In December 2023, Worsham filed a response to the petition for removal.

The county court held the trial on the petition to remove Worsham as personal representative on May 13 and 14 and July 12, 2024. Worsham attended all three days with his attorney, Brenner. Susan Spahn and Andrew Schlosser represented the heirs who filed the petition to remove. The Kerls were not represented by counsel and did not attend the removal hearing. On November 15, 2024, the county court entered an order removing Worsham as personal representative. The court concluded Worsham engaged in self-dealing, and removal was necessary under Neb. Rev. Stat. § 30-2454(b) (Reissue 2008). The court specifically found that Worsham continued paying himself a salary without notice or assessment of reasonableness and failed to account for and distribute income from property specifically devised to other beneficiaries. The court also reasoned that Worsham had improperly used estate funds for personal benefit by paying off loans on property and vehicles devised to him. Even more, Worsham submitted flawed inheritance tax worksheets and engaged in self-dealing by distributing estate property to himself without court approval days before trial.

## III. ASSIGNMENTS OF ERROR

On appeal, Worsham assigns, condensed and restated, that the county court erred in (1) exercising jurisdiction to remove him as personal representative and (2) removing him as personal representative without wrongdoing or cause.

## IV. STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Guardianship of Patrick W.*, 316 Neb. 381, 4 N.W.3d 833 (2024). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision

conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*.

An appellate court, in reviewing a probate court judgment for errors appearing on the record, will not substitute its factual findings for those of the probate court where competent evidence supports those findings. *Id*.

## V. ANALYSIS

### 1. NOTICE

Worsham argues that the county court "erred in the process" of removing him as personal representative because the proceedings did not comply with § 30-2220. Brief for appellant at 16.

Section 30-2220 provides in relevant part:

(a) If notice of a hearing on any petition is required and except for specific notice requirements as otherwise provided, the petitioner shall cause notice of the time and place of hearing of any petition to be given to any interested person or his or her attorney if he or she has appeared by attorney or requested that notice be sent to his or her attorney.

(1) If the identity and address of any person is known (i) by mailing a copy thereof at least fourteen days before the time set for the hearing by certified, registered, or ordinary first-class mail . . . , or (ii) by delivering a copy thereof to the person being notified personally at least fourteen days before the time set for hearing; and

(2) By publishing at least once a week for three consecutive weeks . . . , the last publication of which is to be at least three days before the time set for hearing. . . .

(c) The court for good cause shown may provide for a different method or time of giving notice for any hearing.

(d) Proof of giving of notice shall be made on or before the hearing and filed in the proceeding.

Worsham further claims that, because the petition for removal was not properly noticed and supported by proof of service, the petition was invalid, and the court abused its discretion in ruling on it. On that basis, Worsham raises his argument as a question of jurisdictional merit. However, Worsham does not clearly assign whether he is invoking lack of subject matter jurisdiction or lack of personal jurisdiction, nor does he provide any legal authority establishing that notice defects implicate either. Instead, his argument rests solely on procedural defects in relation to notice. Worsham asserts that the record shows no affidavit of publication, no filed proof of service for multiple hearings, and no notice to the Kerls. In contrast, the devisees argue that all parties received actual notice of the petition for removal and trial through court issued notices and orders served well in advance. The devisees further rely on *In re Estate of Marsh*, 307 Neb. 893, 951 N.W.2d 486 (2020), stating that any defect was harmless because no party was prejudiced.

An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting error to be considered by the appellate court. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019). Regardless of the deficiencies in Worsham's argument, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. See *In re Estate of Weeder*, 318 Neb. 393, 16 N.W.3d 137 (2025). Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a

claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court. *Id.*

Generally, the county court has exclusive original jurisdiction over all matters related to decedents' estates. *Id.* See, also, Neb. Rev. Stat. § 30-2211 (Reissue 2016) (to full extent permitted by Nebraska Constitution, court has jurisdiction over all subject matter relating to estates of decedents); Neb. Rev. Stat § 30-2209(5) (Reissue 2016) (defining "court" to generally refer to county court for purposes of Nebraska Probate Code).

Clearly, the county court had subject matter jurisdiction to adjudicate the merits of the petition to remove the personal representative as it was filed in a decedent's estate proceeding. Further, an order denying or granting a petition to remove a personal representative is immediately appealable, thus granting this court jurisdiction over the appeal. See *In re Estate of Abbott-Ochsner*, 299 Neb. 596, 910 N.W.2d 504 (2018).

To the extent that Worsham raises the issue of the lack of personal jurisdiction for the county court to act and, thus, this court to consider the appeal, we recognize that Worsham failed to object or address this issue to the county court. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006). Nevertheless, we find the county court had personal jurisdiction because Worsham submitted to the court's authority by participating fully in the removal proceedings. Participation in the proceedings on any issue, other than the defenses of lack of jurisdiction over the person, insufficiency of process, or insufficiency of service of process, waives all such issues except as to the objection that the party is not amenable to process issued by a court of this state. *In re Interest Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019). Thus, a general appearance waives any defects in the process or notice, the steps preliminary to its issuance, or in the service or return thereof. *Id*. A party will be deemed to have appeared generally if, by motion or other form of application to the court, he or she seeks to bring its powers into action on any matter other than the question of jurisdiction over that party. *Id*.

Here, the record demonstrates that Worsham was represented by counsel and participated throughout the proceedings. He appeared at the initial hearing on the petition to remove the personal representative, submitted to stipulations and continuances, and filed an answer contesting his removal. Each of these actions constituted a general appearance invoking the county court's authority on the merits of removal. Consequently, the petition for removal is not rendered invalid. Furthermore, Worsham fails to assert how failure to publish notice, provide proof of service for the multiple hearings, or give specific notice to the Kerls prejudiced any of the interested parties. See *In re Estate of Marsh*, 307 Neb. 893, 951 N.W.2d 486 (2020) (error without prejudice is not ground for reversal). Thus, this claim fails.

## 2. REMOVAL

Worsham argues that the county court abused its discretion by removing him as personal representative because his actions did not constitute wrongdoing or cause. Worsham asserts that he consistently relied on his attorney's advice and that every transaction was undertaken in good faith to promote the estate's interest. In contrast, the devisees assert that Worsham's actions, or failures to act, as personal representative provided numerous grounds for removal, including, among other things, unauthorized monthly payments to himself, failing to account to devisees for

income received from specifically devised farmland, and improperly using estate property for his personal benefit. Upon our review of the record, we affirm the county court's decision to remove Worsham as personal representative.

Under Neb. Rev. Stat. § 30-2464 (Reissue 2016), a personal representative is a fiduciary, and a fiduciary relationship exists between a personal representative and the estate of the deceased, as well as the heirs, beneficiaries, and all persons interested in the estate. *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021). A personal representative's duty is to act on behalf of the estate with the end goal of distributing and closing that estate. *Id*. That duty must be exercised "as expeditiously and efficiently as is consistent with the best interests of the estate." § 30-2464.

Cause for removal exists under § 30-2454(b) when removal would be in the best interests of the estate, or if it is shown that a personal representative or the person seeking appointment intentionally misrepresented material facts in the proceedings leading to appointment, or has mismanaged the estate, or failed to perform any duty pertaining to the office. An appellate court reviewing a trial court's determination regarding removal does not make new factual findings but evaluates whether the county court's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See *In re Guardianship of Patrick W*., 316 Neb. 381, 4 N.W.3d 833 (2024). Given the relevant standard, we examine Worsham's actions in administering the estate.

(a) Statutory Violations and Mismanagement

The record shows that the county court considered Worsham's actions and found several statutory violations and instances of mismanagement. First, the county court found that Worsham made no effort to comply with Neb. Rev. Stat. § 30-2482 (Reissue 2016) because he failed to provide notice to interested persons that he was paying himself a salary and then did not allow the interested parties an opportunity to address the reasonableness with the court. Section 30-2482 provides, in pertinent part, that after notice to all interested persons, the propriety of employment of any person by a personal representative and the reasonableness of the compensation determined by the personal representative for his or her own services may be reviewed by the court.

Worsham argues that Mattoon notified the heirs that Worsham had been paid and would continue to be paid a monthly salary, and that none of the heirs objected to or challenged this arrangement. However, the record reflects that these "financial arrangements" were discussed in the October 2021 email, without any specific mention of the compensation Worsham was to be paid by the estate. Such a vague reference is insufficient to establish notice to the interested parties. Nevertheless, Worsham continued to pay himself a salary for approximately four months before distributing the February 2022 communication that clarified Worsham's salary arrangement. Worsham's argument ignores the statutory requirements in § 30-2482, which require notice and an opportunity for interested parties to seek court review of the reasonableness of the proposed compensation. The county court did not err in finding that Worsham's after the fact disclosure did not satisfy those statutory requirements.

The county court also found, in 2023, Worsham used farmland specifically devised to the other heirs, without accounting to them for the net income earned on the specific properties devised to each of them, in violation of Neb. Rev. Stat. § 30-3122 (Reissue 2001). Section 30-3122 provides:

A fiduciary of an estate . . . shall determine the amount of net principal receipts received from property specifically given to a beneficiary under the rules of sections 30-3124 to 30-3147 which apply to trustees and the rules in subdivision (5) of this section. The fiduciary shall distribute the net income and net principal receipts to the beneficiary who is to receive the specific property.

Worsham's financial records revealed that income and expenses were maintained only for the estate as a whole. Worsham claims that he was not directed to develop an accounting of income and expense for each parcel individually, but even if he did, any income would have been consumed to pay administrative expenses and estate debts. Worsham's argument, in part, ignores Nebraska's abatement statute. Neb. Rev. Stat. § 30-24,100 (Reissue 2016) requires that "shares of distributees abate . . . in the following order: (1) property not disposed of in the will; (2) residuary devises; (3) general devises; (4) specific devises." Whether the income related to specific devises would have been abated to pay debts and expenses is not a reason for Worsham to neglect his fiduciary responsibility. Further, Worsham's claim that he was not otherwise directed to specifically account for income is not a defense to a fiduciary's statutory requirement to do so.

In addition, the county court found Worsham, as personal representative, breached both his duty to distribute net proceeds to specific devisees and his duty to settle and distribute Hyde's estate efficiently when he continued to farm for two years after Hyde's death. Worsham contended he continued farming operations to use the proceeds to pay the administrative expenses and debts of the estate before asset distribution. However, instead of producing income, Worsham's continued farming operations caused farming losses of $91,625 in the first year and $43,772 in the second. Thus, we find nothing arbitrary, capricious, nor unreasonable about the county court's decision.

(b) Self-Dealing

Next, the county court found that Worsham engaged in self-dealing, including making payments on a BMW loan that was his personal responsibility, farming non-estate property without reimbursing the estate rent for using estate equipment, and paying for repairs and maintenance on property devised to himself. According to Neb. Rev. Stat. § 30-2347 (Reissue 1995), "[a] specific devise passes subject to any security interest existing at the date of death, without right of exoneration, regardless of a general directive in the will to pay debts."

Worsham claims that he relied on the advice of his attorney and the general directive in the will to pay debts. However, this court has previously determined that "a testamentary order to pay debts is considered a general directive, . . . and where statutory provisions make payment of a testator's just debts mandatory, as in Nebraska, a direction in the will that such debts be paid is meaningless as to actual debts. . . ." *In re Estate of Young*, No. A-96-423, 1997 WL 426191 at *6 (Neb. App. July 1, 1997) (not designated for permanent publication).

Based on our review of the record, including the general language of the will, we conclude that the county court did not err in finding that Worsham was not allowed to use estate funds to pay off the BMW loan, and, further, that his self-dealing actions caused a financial detriment to the other devisees. Any rents due and owing, as well as estate funds used to pay for Worsham's personal debt, may have been applied toward administrative expenses or estate debts. In addition,

the court recognized that Worsham's decision to pay for repairs and maintenance for the farm equipment devised to himself, so that he could continue to farm, violated his duty to expediently administer and distribute the estate.

The county court also took exception to Worsham's distribution of a $210,000 tractor to himself three days before trial, without seeking court approval, in violation of § 30-2454(a). Section 30-2454 (a) provides that "[a]fter receipt of notice of removal proceedings, the personal representative shall not act except to account, to correct maladministration or preserve the estate." After Worsham's appearance on the petition to remove, he was effectively suspended from taking any further action. See *In re Estate of Cooper*, 275 Neb. 322, 746 N.W.2d 663 (2008) (notice to personal representative under § 30-2454 effectively suspends personal representative). Worsham's argument that his distribution was necessary to save the estate money on the tractor loan and insurance and to continue to farm to pay the debts fails. As previously stated, the farm lost money in the two years Worsham farmed after Hyde's death, and the tractor was covered by a blanket farm policy that Worsham acquired in 2023 when he made the first round of vehicle and equipment distributions to himself. Thus, as appellees point out, it's hard to fathom how distribution of this tractor eleven months after the petition to remove was filed can be considered anything other than self-dealing.

(c) Inheritance Tax

As personal representative, Worsham was responsible to prepare and file an accurate inheritance tax worksheet to permit final settlement. Instead, the county court recognized that Worsham submitted three inheritance tax worksheets, each containing material errors. Under Neb. Rev. Stat. § 77-2018.04 (Reissue 1986), deductible expenses are limited to administrative costs accruing due to death, such as probate and court fees, and expressly exclude ongoing business expenses. Further, deductions are permitted only to "the extent paid from, chargeable to, paid, payable, or expected to become payable with respect to property subject to Nebraska inheritance taxation." *Id*. Worsham's first worksheet omitted taxable tangible property, the second included assets not subject to inheritance tax, and the third improperly assigned deductions to Worsham, thereby reducing his own tax liability while shifting expenses to the estate. Each worksheet also claimed non-deductible operational expenses, such as seed, repairs, and harvest costs.

Although no statutory fines have accrued due to Worsham's payment of tentative tax, Worsham's continued noncompliance has prevented the completion of an accurate inheritance tax determination to date. Consequently, the court correctly admonished that the estate cannot progress without a compliant inheritance tax worksheet under § 77-2018.04. The county court therefore did not abuse its discretion when concluding that Worsham's removal was warranted.

(d) Worsham's Reliance on Advice of Counsel

As justification for his objectionable actions, Worsham argues that he relied upon the advice of his attorney, Mattoon, as approved by the Nebraska Supreme Court in *In re Estate of Markus*, 232 Neb. 947, 442 N.W.2d 883 (1989). Worsham also points to Neb. Rev. Stat. § 30-2476(21) (Reissue 2016), which permits a personal representative to "employ persons, including attorneys . . . to advise or assist the personal representative in the performance of his administrative    duties;    [and]    act    without    independent    investigation    upon    their

recommendations. . . ." Collectively, Worsham contends he has "absolute authority under Nebraska law" to follow his attorney's direction. Brief for appellant at 29. We find this argument fails to recognize the responsibility of a personal representative.

A personal representative shall use the authority conferred upon him or her by the Nebraska Probate Code; the terms of the will, if any; and any order in proceedings to which he or she is a party for the best interests of successors to the estate. *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021). Furthermore, a personal representative is a fiduciary who has a duty to act in good faith. See § 30-2464.

Worsham's reliance on *In re Estate of Markus* and § 30-2476(21) for blanket authority to follow his attorney's advice and ignore his own duty and responsibility is misplaced. First, the holding in *In re Estate of Markus* that relying on advice of counsel was reasonable was limited to its facts where the personal representative faced genuine ambiguity in a court order and sought the advice of counsel how to act. Second, § 30-2476 in its introduction reminds a personal representative of their duty to act reasonably for the benefit of the interested persons when employing others and relying on their advice.

Worsham's pattern of conduct in mismanaging the estate, engaging in self-dealing, and disregarding his fiduciary responsibilities as set forth above does not align with a personal representative's authority to act reasonably in the best interests of the beneficiaries, nor were his actions exercised in good faith. Nebraska law does not authorize or condone such actions.

## VI. CONCLUSION

After review of the record, we find the county court's findings are supported by competent evidence, conform to the law, and are neither arbitrary, capricious, nor unreasonable. The county court did not err in exercising jurisdiction over the removal proceedings and finding cause to remove Worsham as personal representative of Hyde's estate. Accordingly, the decision of the county court is affirmed.

AFFIRMED.